45 N.J. Super. 294 (1957)
132 A.2d 314
WILLIAM J. STACK, PLAINTIFF-APPELLANT,
v.
CITY OF HOBOKEN, A MUNICIPAL CORPORATION, RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENT. [1952 and 1953 Assessments] WILLIAM J. STACK, RESPONDENT-APPELLANT,
v.
CITY OF HOBOKEN, A MUNICIPAL CORPORATION, PLAINTIFF-RESPONDENT, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENT. [1952 and 1953 Assessments]
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1957.
Decided June 3, 1957.
*295 Before Judges CLAPP, JAYNE and FRANCIS.
*296 Mr. Raymond J. Lamb argued the cause for appellant William J. Stack (Messrs. Emory, Langan, Lamb & Blake, attorneys).
Mr. Herbert H. Fine argued the cause for respondent City of Hoboken.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Appeal is taken by William J. Stack from judgments of the Division of Tax Appeals assessing 6.92 acres of land under water on the Hoboken waterfront at $20,000 an acre for the years 1952 and 1953. Stack contends that this is excessive.
On September 24, 1951, six days before the assessment date for 1952, the parcel was acquired by Stack for $100 from Hudson Realty Company, a wholly-owned subsidiary of the Lackawanna Railroad. At the time this parcel constituted a major part of the underwater lands lying between the pierhead line and Hudson's upland property at 11th Street, Hoboken. Another large portion of the pier property formerly owned by Hudson  the portion located at 12th Street, consisting of 60% of upland and 40% of underwater property  had been sold in 1938 by Hudson to General Foods Corp. at the rate of about $28,000 an acre.
From 1940 to 1951 the tract owned by Hudson at 11th Street, of which tract Stack's parcel was a part, was assessed by the Director of the Division of Taxation as second-class railroad property at amounts ranging from $70,300 to $66,660 an acre. N.J.S.A. 54:29A-17. In 1952 Hoboken omitted to assess Stack's property, but the county board on application (N.J.S.A. 54:4-63.12) assessed it at $10,000 an acre; in 1953 Hoboken assessed it at $30,000 an acre, but the county board reduced the assessment to $10,000 an acre. In each of those years the Division, as above stated, assessed it at $20,000 an acre.
It is said in Stack's brief that notwithstanding the deed to him, Hoboken unsuccessfully attempted to have the property retained on the Director's rolls for 1952, as second-class *297 railroad property owned by Lackawanna or Hudson. The implication is that there was a hearing before the Director to which Hoboken was a party and that the question whether Lackawanna or Hudson owned the property was then determined. But the record of that proceeding is not put before us, and we have no means of knowing who were parties to it, what issues were decided and whether the doctrine of res judicata is now applicable. Hoboken seems to have claimed on the oral argument before us that the issue in that proceeding was over the date of the sale, not over the ownership of the property. However the point as to res judicata is not strongly pressed by Stack.
A more important question in the case is raised by various circumstances impugning the sale to Stack. There is no doubt but that the parcel sold him was designedly dissected from the upland. His westerly property line ends ten feet east from the bulkhead line of the Hudson River, leaving the intervening ten feet in Hudson's ownership; his southerly line is 75 feet from a float bridge which is serviced by the Lackawanna tracks and to which barges are moored; and his northerly line is 150-200 feet from the General Foods pier. On Stack's parcel is located an old pier which is connected to the bulkhead through (as he described it) a catwalk or (as described by another witness) an open deck pier 15 feet wide. However, neither under the deed, nor otherwise, was Stack given any means of ingress or egress over this catwalk or pier or in other fashion to or from the upland; indeed the deed expressly negatives an easement by implication.
Moreover, the Division found that the property was in the same use before and after the conveyance. But this apparently means merely that the property has been put to little use during these years; since the deed to Stack, no use has been made of it, except that a dredge or, on one occasion two dredges, have been moored to Stack's pier. The owner of the dredges had paid Hudson $12.50 a month rental and offered to pay the same to Stack, but Stack, on advice of an attorney unconnected with the railroad, never *298 collected the rent. Since the deed to Stack, the dredge has been using the property without charge.
As the Division found, there is a close relationship between Stack and the Lackawanna; in numerous proceedings from 1938 on, he has appeared in its behalf as a real estate appraiser. In the instant proceeding he testified that the true value of the property was $100 on the date of the deed to him and $7,000 ($1,000 an acre) six days thereafter. Furthermore, he orally put a price of $7,000 on it. These circumstances create imputations which Stack sought to repel by testifying that he had not made any oral or written agreement to reconvey the property to Hudson or the Lackawanna, and that he held the property "free and clear of any strings" running to Hudson, the Lackawanna or anybody else. Nevertheless, the Division found, and not without reason, that the bona fides of the sale to Stack was "seriously in doubt."
The question then is, how does that finding affect the Division's decision as to valuation? In other words, what was the theory of that decision? On this matter, we are not clear. Hoboken urged (particularly on the oral argument) that the doubt entertained by the Division, or the doubt which would be entertained by any reasonable person, as to the bona fides of the sale was a condition in which the property was held, and that this doubt therefore becomes a major factor when fixing the market value of the property and so, its true value. The Division perhaps took the same view. In its conclusions, it stated:
"* * * it is the finding of this body that [whether or not the property is in railroad use and railroad ownership] is in serious doubt and that an independent appraiser would have to take this into account in arriving at his conclusion." (Italics added.)
Should this doubt as to the good faith of the sale to Stack affect the true value of the property? Before we deal with this question, it should be noted that if the parcel in question were in fact owned by Lackawanna, additional value might be attributed to it because of the use to which *299 it and the upland could be put jointly. On the other hand, if the ownership of the parcel were entirely divorced from the ownership of the upland, it might be worth substantially less. Indeed, the assessment of the property by the Director of the Division of Taxation for 1951 at $66,660 an acre, and the assessment made by Hoboken in 1953 at $30,000 an acre, furnish significant evidence on the point.
It has been repeatedly said that for tax purposes land must be valued in the condition in which the owner holds it. But is this doubt as to whether Stack holds title in trust for the upland proprietor, to be deemed a condition within this rule? In assessing the value of land, account should be taken not only of its actual use and physical condition, but also of interrelated uses connecting it with other property, as, where the land in question is a part of a larger tract having more or less value as an economic unit. City of Newark v. Township of West Milford, 9 N.J. 295, 304 (1952); Colwell v. Abbott, 42 N.J.L. 111, 115 (Sup. Ct. 1880); Stevens Institute of Technology v. State Board, 105 N.J.L. 99, 101 (Sup. Ct. 1928), affirmed 105 N.J.L. 655 (E. & A. 1929); State v. State Board, 134 N.J.L. 34, 43 (Sup. Ct. 1946); Hackensack Water Co. v. State Board, 122 N.J.L. 596 (Sup. Ct. 1939); Borough of Haworth v. State Board, 127 N.J.L. 67, 69 (Sup. Ct. 1941); cf. Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 110 (1952). Account should likewise be taken of the condition of the environment and adjacent property. New York, Lake Erie and Western R. Co. v. Yard, 43 N.J.L. 632, 637 (E. & A. 1881) (frontage on water); New York, Lake Erie and Western R. Co. v. Hughes, 46 N.J.L. 67, 70, 71 (Sup. Ct. 1884) (the right to purchase adjoining land under water for wharfage rights should be considered as entering into taxable value of waterfront property); Long Dock Co. v. State Board, 89 N.J.L. 108, 112 (Sup. Ct. 1916), affirmed 90 N.J.L. 701-703 (E. & A. 1917); United New Jersey R. & Canal Co. v. State Board, 101 N.J.L. 303, 314 (Sup. Ct. 1925); Trask v. Carragan, 37 N.J.L. 264, 268 (Sup. Ct. 1874); Paulison v. Taylor, *300 35 N.J.L. 184, 187 (Sup. Ct. 1871); State v. Flavell, 24 N.J.L. 370, 385 (Sup. Ct. 1854); Susquehanna Power Co. v. State Tax Comm., 283 U.S. 291, 296, 51 S.Ct. 434, 75 L.Ed. 1042, 1046 (1931). And other conditions may have to be reckoned with, which need not be considered here.
But the above cases do not dispose of the present problem. If the value of land under water depends in part on whether its owner has access to the upland, the question whether or not he has such access has to be resolved, and not compromised. We do not know whether the Division attempted in some measure to average the value which the property would have if the owner in fact had such access and the value it would have without the access. However, if the Division did this, its decision cannot be sustained.
It must be apparent that in assessing the value of land, account should not be taken of the condition of the title of the alleged landowner or of any cloud upon it; nor should account be taken of the possibility that he would be unwilling to sell it because of an understanding with his grantor, or of the possibility that a purchaser would be put on notice that this grantor has an equitable interest in the property. The law requires an assessment of the value, not of the purported owner's title, but of the land; the assessed value of the land represents the value of all interests in the land. N.J.S.A. 54:4-23. Cf. N.J.S.A. 54:4-54: "* * * No assessment * * * shall be considered invalid because listed or assessed in the name of one not the owner * * *"; Becker v. Mayor and Council of Borough of Little Ferry, 126 N.J.L. 338 (E. & A. 1941); Manistee Iron Works Co. v. Township of Raritan, 12 N.J. Misc. 143, 146 (Sup. Ct. 1934); State v. Metz, 29 N.J.L. 122 (Sup. Ct. 1860); N.J.S.A. 54:4-24 as to title held in trust; Herr v. Board of Education, 82 N.J.L. 610 (E. & A. 1912); cf. also Ocean Grove Camp Meeting v. Reeves, 79 N.J.L. 334 (Sup. Ct. 1910), affirmed 80 N.J.L. 464 (E. & A. 1911). And the fact that the title of the alleged owner is dubious is not a proper basis for reducing the land's value for tax purposes.
*301 We therefore are unable to support Hoboken's theory of the decision below; the mere fact that there is a doubt as to whether the underwater land is owned by the upland proprietor or as to whether there is some understanding pursuant to which Stack or a purchaser from him might secure access to the upland, is not a condition to be taken into account in assessing the underwater land. But perhaps there was another basis for the Division's determination. It may have been held that, so far as proved, Lackawanna had no right, title or interest, legal or equitable, in the parcel, but that, nevertheless, the parcel should be valued at $20,000 an acre. In reaching this determination, the Division may, relying in part on its own knowledge as to value (see further In re Kresge-Newark, Inc., 30 N.J. Super. 489, 496 (App. Div. 1954)), and upon the proofs adduced, have evaluated the property, perhaps, at a figure representing its worth to some purchaser desiring to buy both the parcel and the upland. The mere fact that an immediate purchaser is not produced does not mean that the land is bereft of value. If this be the proper theory of the decision, then the various findings made with respect to Stack's possible lack of good faith, seem to have no place in the case, except in one respect: they indicate why the Division refused to accept the sale price of $100 as evidentiary of the value of the property.
Since we are in doubt whether this last theory was adopted below, we will have to remand the case for further findings and for the taking of such further proofs, if any, as the Division may deem advisable. Township of North Bergen in County of Hudson v. Dieckmann's Estate, 37 N.J. Super. 221, 223 (App. Div. 1955). In the meantime, we will retain the appeal. Supplemental briefs and appendices may be filed by the parties in this court after the filing of the supplemental findings.