86 N.J. Super. 492 (1965)
207 A.2d 330
IN THE MATTER OF THE APPEAL OF THE TOWNSHIP OF NEPTUNE IN THE COUNTY OF MONMOUTH, TOWNSHIP OF NEPTUNE, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION, APPELLANT,
v.
SHARK RIVER HILLS BEACH CORPORATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1964.
Last Supplemental Brief Filed November 5, 1964.
Decided February 19, 1965.
*493 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. William J. O'Hagan argued the cause for appellant (Messrs. Stout & O'Hagan, attorneys).
Mr. Sidney J. Bernstein argued the cause for respondent (Mr. Irving E. Kosky, attorney).
*494 The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from an assessment made by the Division of Tax Appeals, Department of the Treasury (Division), on a beach front property and improvements owned by respondent Shark River Hills Beach Corporation (taxpayer).
The premises are known as Block 402, Lot 14, Riverside Drive, Neptune Township. The local assessor valued the property for tax purposes at $56,500, $53,000 on the land and $3,500 on improvements. On appeal by the taxpayer, the Monmouth County Board of Taxation reduced the assessment to $33,500, $30,000 on land, $3,500 on improvements. The taxpayer then appealed to the Division which further reduced the assessment to $16,100, $12,600 on land and $3,500 on improvements. The township cross-appealed to the Division from the county board reduction, seeking the reinstatement of the assessment made by the local assessor. The present appeal is by the township, which seeks to set aside the decision of the Division and to reinstate the original assessment.
The township contends that the Division erred: (1) in basing the value of the real estate for assessment purposes upon the character of the title held by the taxpayer rather than the value of the land itself, and (2) by holding that the taxpayer was vested with "but little more than a license to use the land" for limited purposes, which so encumbered the fee that the land should not be assessed as it would be if the limitations on use did not exist. The position of the taxpayer is: (1) the assessment was not based on the title to the property but rather on its value as reduced by restrictions on the use thereof contained in the deed of conveyance, and (2) the taxpayer owns less than a fee simple in the land and therefore is not subject to real property taxes.
The facts are not in dispute. The parcel under appeal consists of a narrow strip of land located in a residential area which is referred to as Shark River Hills Estates, and lies between Shark River and Riverside Drive, which parallels the *495 river. The width of the strip varies between 40 feet and 60 feet, and it is about 1,400 feet long. It is used as a bathing area by residents of Shark River Hills Estates who are members of the Shark River Hills Beach Corporation, organized as a nonprofit corporation "for purposes necessary or incidental to the improvement of Shark River Hills Beach by its members." The improvements on the property consist of a small frame house, a 500-foot bulkhead, facilities for small boating, and a fence which borders upon Riverside Drive.
The taxpayer obtained title to the property from the township by a deed dated August 21, 1952, which contains the following paragraph:
"It is agreed and understood that this conveyance is made, executed and accepted upon the express condition that the grantee, its successors or assigns, and any lessee, shall not use or occupy the herein described lands and premises for any purpose other than a bathing area and shall not receive any profit for the use thereof, and shall not erect any structure or structures upon the said lands and premises without the written consent of the grantor, and shall not convey, mortgage or otherwise alienate the said lands and premises without the written consent of the said grantor, and in the event of a violation of any of the said conditions this deed shall become null and void and the grantee shall forfeit all right and title to the said lands and premises and all interest therein shall revert without prejudice to the grantor herein."
Subsequently the taxpayer acquired from the State of New Jersey, by purchases and leases, riparian rights in the waters of Shark River adjacent to the property. The instruments which evidence these transactions prohibit the taxpayer from appropriating the lands under water, placing solid fill thereon, or erecting any structure other than a pier or piers under which the tide may ebb and flow.
At the hearing in the Division each side called one expert witness. Frank B. Maring, a real estate broker and appraiser called by taxpayer, testified that he was familiar with property values in the "neighborhood" and had made an appraisal of the subject property. He said also that in appraising the *496 property he had taken into consideration "the substance in the deed as affecting the value of the property." Then:
"Q. Now, in your judgment, Mr. Maring, is there any value attached to this property in view of the reverter clauses in the deed? A. Well, I am going to have to answer that question by saying that if we pursue the definition of fair market value, the willing buyer and the willing seller concept, both being aware of all the facts, and neither being under compulsion to buy or sell, I would say that it has no value on that basis. But I must say that it does, it has to have some value, and I think it does have a value in use. I don't think it could be sold. Well, it probably could be sold in the market, but it certainly couldn't be sold for very much money, because there are too many strings attached to the property.
Q. Now, Mr. Maring, would you say that an average buyer would be interested in this type of property? A. No.
Q. Now, when you mentioned that it had some value to this property, do you mean that it has some value, intrinsic value, to the bathing club? A. I think it has some value to the bathing club. In the first place, they bought it for that purpose.
Q. So that the value, the intrinsic value to the bathing club, is not the same type of value that a third party, or a willing buyer, would pay for it, is that correct? A. No, that is correct."
Maring concluded that the "intrinsic value" of the property was $12,600, consisting of the purchase price paid by the taxpayer plus the depreciated value of the building thereon, the cost of the border fence, and the monies expended for the purchase and lease of the riparian rights. He did not take into consideration the value of the bulkhead. Maring stated that the highest and best use of the property was "as it is now used, as a bathing beach for the common use of the Shark River Hills Association, for the members or owners of the property and their guests to enjoy the swimming facilities." Then:
"Q. Mr. Maring, am I correct in stating then that this value which you have placed on this property in your report, in your appraisal, is not the value as a purchaser, a private purchaser, would pay for it in the normal course of business? A. I don't think so. There isn't a question here in my mind of a willing buyer and a willing seller. I don't think this property, if offered on the market, could be sold or would be purchased by anybody with a view to profit or use. It can't be used for much other than it is being used now; and on that basis, *497 I would say it has zero value. But I am trying to be practical about this thing. It must have some value for taxation purposes."
The township called as a witness its assessor William C. Hogan, who justified his valuation as above set forth. He said that the property, which extends 1420 feet on Riverside Drive, is located in a residential area and, as such, has a value of $60 per front foot with a depth factor of 100 feet; and that he had valued the property on this basis, subtracting 40% for lack of depth. At one point in his testimony he said that he had "considered all of the improvements," including the bulkhead, the installation cost of which was "practically $35 per front foot." However, when he was asked what formula he had used to assess or appraise the property, he replied:
"I used the front foot value with a depth factor, and gave the benefit by not increasing these values by the improvements thereon; just a straight flat value.

* * * * * * * *
Q. I asked you for what purpose. When you assessed this front foot, with a depth factor of 100 foot deep, what did you assess for what purpose to be used? * * *
Q. For bathing? A. Yes.

* * * * * * * *
Q. Now, you say that the 100 per cent factor would be sixty to eighty dollars? A. Yes.
Q. Now, when you considered for bathing 100 feet deep, the depth of land, then the property could be utilized to a better advantage than what it is today, is that correct? A. Frankly  may I explain?
Q. Will you answer my question yes or no. A. I can't answer that question yes or no.
Q. Will you explain why? A. I will be glad to.
Q. All right. A. This property is zoned residential. As such, in this area, it is approximately 60 feet in width as opposed to 40 feet in the rest of it.
Q. Take it easy. Go slow, go slow. It is zoned for residential? A. That is correct. Now, as residential property and with your riparian rights 

* * * * * * * *
A. (continuing)  As residential property, and with riparian rights, you have the privilege of building. The riparian rights extend from 75 to 150 feet. I'm not sure of what depth, but it is a minimum of 50 feet. The only restriction on building on this riparian rights is that you do not obstruct the flow of the river. Therefore, as I testified before, no building could be built. Buildings can be built there, the only proviso is that you do not obstruct the flow of the river.

*498 * * * * * * * *
Q. Maybe I can shorten this up a little bit. You value this property at sixty or eighty dollars a front foot? A. I believe it is $60.00 a front foot, with the depth factor."
The Division accepted Maring's appraisal of the land, $12,600, and Hogan's valuation of the beach building, $3,500. The hearing officer prefaced his finding by the following discussion:
"Counsel in this case engaged in some discussion as to the nature of the estate held by the taxpayer. In form, of course, the fee to the property was vested by the deed subject to conditions which, if one occurs, will result in a reverter. There may be a doubt as to the legality of the restriction upon alienation, but this Division is not called upon to pass upon the niceties of conveyancing. In fact, the form makes little difference. To say that the taxpayer is vested with but little more than a license to use the land would be close to an accurate description of his tenure.
The question before me is not whether the taxpayer has a fee or a license or if the property is taxable or exempt, but, rather what is the value of the property in the hands of the Shark River Hills Beach Corporation, burdened with the conditions imposed by the deed. In the Allison Estate case, the Division of Tax Appeals hesitated to reduce the value assigned to the property because the public use which the court found deprived it of value was imposed by the act of the property owner alone. No such problem exists in this case. The burdening conditions were imposed by the taxing authority. When a township conveys a parcel of land and makes the conveyance contingent upon significant conditions that deprive the taxpayer of some of the ordinary attributes of ownership, it should not be heard to contend that for tax purposes the value of that parcel of land is the same as though the conditions did not exist. It might be said that property which was exempt because it was owned by the township was conveyed only in part, and hence only the part conveyed is taxable.
I therefore find that the assessor was in error when he valued this property for tax purposes consistent with the adjacent property, the owners of which were entitled to use and convey their property as they pleased."
The Constitution of 1947, Art. VIII, § I, par. 1, provides that property "shall be assessed for taxation under general laws and by uniform rules." Pertinent implementing legislation follows:
*499 N.J.S.A. 54:4-1. "All property real or personal within * * * this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually * * * Such property shall be valued and assessed at the taxable value prescribed by law."
N.J.S.A. 54:4-23. "All real property shall be assessed to the person owning the same on October 1 in each year. The assessor shall * * * determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract * * *."
The word "parcel" as used in the statute has been construed to mean unit of land, together with its concomitant improvements, if any. City of Newark v. West Milford Tp., 9 N.J. 295 (1952). The law requires an assessment of the value, not of the owners' title, but of the land; the assessed value represents the value of all interests in the land. Stack v. Hoboken, 45 N.J. Super. 294, 300 (App. Div. 1957).
In Stack it was argued that there was doubt as to the validity of the title of the land assessed, and that this fact should be reflected in the assessment. That question is not presented here and we need not concern ourselves with it. In the present case the deed from the township to the taxpayer plainly vested in the latter a fee subject to restrictions, violation of which would effect a reversion to the grantor. The taxpayer contends that the restrictions and possible reversion destroy the fee and reduce the taxpayer's interest in the property to a nontaxable license to use the property. In support of its argument the taxpayer relies heavily upon Borough of Englewood Cliffs v. Estate of Allison, 69 N.J. Super. 514 (App. Div. 1961). In that case trustees under the will of Allison owned a tract of land in Englewood Cliffs which, pursuant to the will of Allison, was dedicated and developed for public park purposes. The trust was irrevocable and the taxpayer had no beneficial interest in the property. It had nothing more than legal title in trust for the purposes described, with the remote possibility that the trust might at some future time be terminated. This court held that in these circumstances a "true value" assessment of the property should not *500 include elements of value transferred to other properties or transferred to the community at large in the form of public rights, and reduced the assessment by the proportion which the public rights value bore to the true value of the property.
We find the Allison case inapposite to the case at bar. Here the property was not dedicated to public purposes. Moreover, there are no easements on the property to the public or to another taxpayer within the meaning of the cases which permit a reduction in value because of such easement. See Metropolitan Life Ins. Co. v. McGurk, 119 N.J.L. 517 (E. & A. 1938); Lipman v. Shriver, 51 N.J. Super. 356 (Law Div. 1958); Ehren Realty Co. v. Magna Charta B. & L. Ass'n, 120 N.J. Eq. 136 (Ch. 1936). We conclude, therefore, that (1) the property acquired from the township is owned by the taxpayer in fee simple, and (2) the restrictions contained in the deed of conveyance may not be considered in fixing the market value of the property as a bathing beach club  the purpose for which it was acquired, and for which it has been used by the taxpayer for purely private purposes.
We have considered the evidence carefully with a view to exercising our original jurisdiction and arriving at an assessment. However, the basic fallacies in approach of the experts called by both parties which we find, make this impossible, and we are obliged to remand.
Subject, of course, to contingencies which are not before us, we direct that the determinations of the Division be based upon the market value of the parcel as a bathing beach club. Consideration should be given to advantages to the club property which inhere in the existence of the riparian rights, even though the land under water may not be taxed as such because the taxpayer, by virtue of the provisions of grants or leases, is deprived of the right to appropriate such land to its own purposes or place solid fill in the area. Cf. Island Heights v. Presbyterian Camps, etc., 68 N.J. Super. 291 (App. Div. 1961), wherein it was agreed that as to the underwater land there assessed, the taxpayer had the right to fill it and to appropriate it to its private uses. Likewise, we are of the *501 opinion that the value of the bulkheading as an adjunct to the beach club property should be included in the assessment, together with any other improvements which increase the value of the parcel as a beach club property.
Remanded for proceedings not inconsistent herewith.