Eph H. HOOVER, Jr., Betty Hoover Derryberry and Dorothy Crawford Hoover Milam, Plaintiffs-Appellees,

v.

STATE BOARD OF EQUALIZATION, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Dec. 27, 1978.

Certiorari Denied by Supreme Court April 2, 1979.

William W. Burton, D. Russell Thomas, Murfreesboro, Lewis B. Hollabaugh, Nashville, for plaintiffs-appellees.

William Leech, Atty. Gen., David S. Weed, Sr. Asst. Atty. Gen., Nashville, for defendant-appellant.

OPINION

LEWIS, Judge.

This appeal raises an issue concerning the proper interpretation of T.C.A. § 67–606(5): Whether a court-imposed restriction that limits a life tenant's ability to alien, convey, or encumber their estate or to lease the estate for a period of longer than one year constitutes a "legal restriction(s) on use" and thereby should be considered in the basis of valuation for property tax purposes.

Plaintiffs acquired property in Rutherford County upon the intestate demise of their mother, Mrs. Eleanor Hoover, and their father's relinquishment of his estate by courtesy. The property was conveyed to the children plaintiffs by the court which imposed restrictions in the deeds to protect their interests as minors. All deed restrictions are the same and are accurately represented by the following granting clause in one of the deeds.

"I, James R. Jetton, as Clerk and Master, do hereby transfer and convey to E. H. Hoover, Jr., his heirs and assigns, for and during the period of his natural life and at his death to his child, children, or descendants thereof living at the time of his death per stirpes and if he have no child, children or descendants thereof living at the time of his death, then to Miriam Martha Hoover, Eleanor Elizabeth Hoover and Dorothy Crawford Hoover, or such of them as may be living at the time of his death and to the descendants, living at the time of the death of the said E. H. Hoover, Jr., of such as may be dead, per stirpes and not per capita, free from the debts, contracts, and liabilities of each respective grantee and exempt from attachment or execution and without the power in each respective grantee to alien, convey or incumber their respective estates and without the power in each respective grantee to lease said property for a longer term than one year in any one contract."

The plaintiffs appealed their property tax assessment for the year 1975. The Hearing Examiner for the State Board of Equalization adjusted the valuation of the properties to reflect the deed restrictions effect on the valuation of the properties.

The Assessment Appeals Commission reinstated the original Rutherford County evaluation, asserting that the deed restrictions affected the alienability of the property and, thus, fell outside the scope of T.C.A. § 67–606(5). The State Board of Equalization refused to review the Commission's decision.

The valuation placed by each of the authorities are:

VALUES PLACED BY RUTHERFORD COUNTY

| Description | Land Value | Improvement Value | Total Value | Assessment |
|---|---|---|---|---|
| Map 176, P–22 | $ 22,750 | $ 2,400 | $ 25,150 | $ 6,288 |
| Map 112, P–1 | 257,000 | 61,000 | 312,000 | 78,000 |
| Map 112, P–3 | 375,000 | 22,850 | 397,850 | 99,463 |
| Map 177, P–14 | 30,600 | 6,500 | 37,100 | 9,275 |
| Map 177, P–15 | 23,350 | –0– | 23,350 | 5,838 |
| TOTAL | $708,700 | $92,750 | $795,450 | $198,864 |

### VALUES PLACED BY HEARING EXAMINER

| Description | Land Value | Improvement Value | Total Value | Assess-ment |
|---|---|---|---|---|
| Map 176, P–22 | $ 14,400 | $ 2,400 | $ 16,800 | $ 4,200 |
| Map 112, P–1 | 156,875 | 60,990 | 217,865 | 54,466 |
| Map 112, P–3 | 234,475 | 22,850 | 257,225 | 59,306 |
| Map 177, P–14 | 22,000 | 4,000 | 26,000 | 6,500 |
| Map 177, P–15 | 13,400 | –0– | 13,400 | 3,350 |
| TOTAL | $441,150 | $90,240 | $531,290 | $127,822 |

### VALUES PLACED BY ASSESSMENT APPEALS COMMISSION AND AFFIRMED BY THE STATE BOARD OF EQUALIZATION

| Description | Land Value | Improvement Value | Total Value | Assess-ment |
|---|---|---|---|---|
| Map 176, P–22 | $ 22,750 | $ 2,400 | $ 25,150 | $ 6,288 |
| Map 112, P–1 | 257,000 | 61,000 | 312,000 | 78,000 |
| Map 112, P–3 | 375,000 | 22,850 | 397,850 | 99,463 |
| Map 177, P–14 | 30,600 | 6,500 | 37,100 | 9,275 |
| Map 177, P–15 | 23,350 | –0– | 23,350 | 5,838 |
| TOTAL | $708,700 | $92,750 | $795,450 | $198,864 |

Plaintiffs filed a Petition for Writ of Certiorari in the Chancery Court for Davidson County. The Chancellor held that the State Board of Equalization decision not to consider the alienability restrictions in the deeds violated T.C.A. § 67–606. The case was "remanded to the Board of Equalization for a determination of the assessment considering the alienability restrictions in the deeds as legal restrictions on use as required by T.C.A. § 67–606."

Defendant has duly perfected its appeal and assigns two (2) errors:

1. The Lower Court erred in holding that the decision of the State Board of Equalization not to consider the alienability restrictions in the deeds violates T.C.A. § 67–606.

2. The Lower Court erred in reversing the decision of the State Board of Equalization because:

"The conclusion that alternative uses are not precluded by the deed restrictions is a conclusion which is unsupported by the evidence in the record."

Tennessee Code Annotated § 67–606 has been amended but subsequent amendments are immaterial to this appeal. Following is the statute as it applies to facts of this case (Supp.1975):

67–606. Basis of valuation.—The value of all property shall be ascertained from the evidences of its sound, intrinsic and immediate value, for purposes of sale between a willing seller and a willing buyer without consideration of speculative values.

In determining the value of all property of every kind, the assessor shall be guided by, and follow the instructions, of the appropriate assessment manuals issued by the state division of property assessments and approved by the state board of equalization.

For determining the value of real property, such manuals shall provide for consideration of the following factors:

(1) location;

(2) current use;

(3) whether income bearing or nonincome bearing;

(4) zoning restrictions on use;

(5) legal restrictions on use;

(6) availability of water, electricity, gas, sewers, street lighting, and other municipal services;

(7) natural productivity of the soil, except that the value of growing crops shall not be added to the value of the land; and

(8) all other factors and evidences of value generally recognized by appraisers as bearing on the sound, intrinsic and immediate economic value at the time of assessment.

For determining the value of industrial, commercial, farm machinery and other personal property, such manuals shall provide for consideration of the following factors:

(1) current use

(2) depreciated value

(3) actual value after allowance for obsolescence

(4) all other factors and evidences of value generally recognized by appraisers as bearing on the sound, intrinsic and immediate economic value at the time of assessment.

It is the legislative intent hereby declared that no appraisal hereunder shall be influenced by inflated values resulting from speculative purchases in particular areas in anticipation of uncertain future real estate markets; but all property of every kind shall be appraised according to its sound, intrinsic and immediate economic value which shall be ascertained in accordance with such official assessment manuals as may be promulgated and issued by the state division of property assessments and approved by the state board of equalization pursuant to law.

Provided, that if the tax computed on an erroneous basis of valuation or assessment has been paid prior to certification of the corrected assessment by the assessor, the trustee or municipal collector shall, within sixty (60) days after receipt of such certification from the assessor, refund to the taxpayer that portion of such tax paid which resulted from the erroneous assessment, such refund to be made without the necessity of payment under protest or such other requirements as usually pertain to refunds of taxes unjustly or illegally collected. [Acts 1973, Ch. 226, § 6; 1974 (Adj.S.), ch. 771, § 8.]

Tennessee Code Annotated § 67–606(5), so far as we are able to determine, has never been construed by the courts of this State. However, in properly deciding the issues presented here, there is some guiding analogous authority in this and other jurisdictions.

In *Town of Secaucus v. Damsil,* 120 N.J. Super. 470, 295 A.2d 8 (App.Div.1972), concerning the effect of a cloud on the title to property, the court stated:

As this Court said in *Re Appeal of Neptune Tp.,* 86 N.J.Super. 492, 207 A.2d 330 (Appeal Div.1965):

"The law requires an assessment of the value, not of the owner's title, but of the land; the assessed value represents the value of all interests in the land. *Stack v. Hoboken,* 45 N.J.Super. 294, 300, 132 A.2d 314 (App.Div.1957) [at 499, 207 A.2d 330]." . . .

It is understandable that the purchaser will insist on a discount from the true value of the property if he buys a doubtful title, but the fact that he does so affords no justification for applying a discount in a tax valuation case. Such a sale and discount is entitled to no essential weight in ascertaining what 'a willing buyer would pay a willing seller' for all the interest in the land. *Id.* at 474, 295 A.2d at 10.

■ For property tax purposes, value attaches to the property itself, not to the interest of the current party in possession. The purchase and sale between the hypothetical parties envisions a hypothetical transfer of the present possessory interest(s) and any future interest attendant thereto. Here, the property interest consists of the present possessory life estate and the expectant remainder interest that completes the full fee in the lands.

In placing a valuation on the property, T.C.A. § 67–606 recognizes the existence of

restrictions and encumbrances that affect the value of the fee simple estate, i. e. zoning restrictions, easements, etc. These are restrictions that run with the land, rather than those that are personal to the parties in possession.

In *NeBoShone Ass'n v. State Tax Commission,* 58 Mich.App. 324, 227 N.W.2d 358 (1975), a nonprofit association which owned land used as a wildlife reserve appealed its valuation as it was affected by a navigable river running through the property.

Concerning the self-imposed restriction on the use of the land, the Michigan Court of Appeals stated:

A private individual could not self-impose a restriction whereby he might be able to limit or avoid paying his just share of the ad valorem taxes due to government nor can a corporation. *Id.* at 334, 227 N.W.2d at 363.

In *Stack v. City of Hoboken,* 45 N.J.Super. 294, 132 A.2d 314 (App.Div.1957), concerning a title holder's status in relation to the property, the court stated:

It must be apparent that in assessing the value of land, account should not be taken of the condition of the title of the alleged land owner or of any cloud upon it; nor should account be taken of the possibility that he would be unwilling to sell it because of an understanding with his grantor, or of the possibility that a purchaser would be put on notice that this grantor has an equitable interest in the property. The law requires an assessment of the value, not of the purported owner's title, but of the land; the assessed value of the land represents the value of all interest in the land. *Id.* at 300, 132 A.2d at 317–8.

Defendant contends that this principle is applicable to the law in Tennessee and that "the condition of appellees' title is irrelevant with respect to tax assessment and valuation purposes."

Defendant directs our attention to *Sherrill v. Board of Equalization for the State of Tennessee,* 224 Tenn. 201, 452 S.W.2d 857 (1970). There, the remaindermen appealed from a dismissal of their petition for certiorari based on an allegation that the State Board of Equalization incorrectly had affirmed an assessment which assessed the remaindermens' interest in the property.

The Supreme Court held that the full value of the land is taxed in the hands of the life tenants, notwithstanding the fact that a life tenant has less than a full and unrestricted ownership of the land.

The restrictions present in the deed before us are primarily restrictions on the alienability of the property. The term "primarily" is used in recognition of the reality that when alienation is restricted, there is a resultant effect on the use of the property. However, the incidental effect on the use is not within the concerns of T.C.A. § 67–606(5). That section directs consideration to "legal restrictions on use" only.

These properties are not subject to any direct restrictions on use. In fact, plaintiffs are free to lease the property within the ambit of the restriction on such alienation. It is their concern that such restrictions greatly inhibit one avenue of use which may, in fact, be one of the prime values of the properties.

However, an alternate construction of T.C.A. § 67–606(5), as argued by the plaintiffs, would have a far-reaching effect on property taxation in Tennessee. To value and assess real property by taking into consideration a self-imposed or court-ordered temporary restriction, as in the facts at hand, would negate the clear mandate of the willing buyer and willing seller concept and could allow property owners to effectively control the valuation of their properties for taxation purposes by careful imposition of limited *restrictions in the deeds to* their properties.

Defendant's first assignment of error is sustained.

Defendant's second assignment of error asserts that if an administrative agency commits harmless error, the reviewing court cannot use it as a proper basis for reversal of the agency's decision. Defend-

ant's contention is in accord with T.C.A. § 4–523(i), which provides:

> No agency decision pursuant to a hearing in a contested case shall be reversed, remanded, or modified by the reviewing court unless for errors which affect the merits of the decision complained of. *Id.* Supp.1978.

The Chancellor stated as a ground for reversal of the Assessment Appeals decision:

> [T]he conclusion that alternate uses are not precluded by the deed restrictions is a conclusion which is unsupported by evidence in the record.

Such a conclusion, whether or not supported by material and substantial evidence in the record, does not affect the merits of the decision as contemplated by T.C.A. § 4–523(i).

Therefore, the error, if in fact it constituted error, was harmless and, thus, did not afford the Chancellor a basis for reversal.

It results that the decision of the Chancellor is reversed and the valuations as determined by the Assessment Appeals Commission are reinstated.

Costs are taxed to plaintiffs-appellees.

TODD and DROWOTA, JJ., concur.