ANDRESINI, J.T.C.
This constitutes the court’s opinion after trial in the above-referenced matter challenging the assessment on plaintiff’s property for the 2009, 2010, and 2011 tax year’s. For the reasons set forth in this opinion, the assessment is affirmed.

I. Procedural History and Findings of Fact

Donato Clemente (“plaintiff’) is the owner of a one story masonry building located in South Hackensack (“defendant”). The property is designated by South Hackensack as Block 50, Lot 17.02, more commonly known as 120 Leuning Street (“subject property”). For the tax years in question, the subject property was assessed as follows:
[[Image here]]
The Director’s (chapter 123) ratio for South Hackensack for each year under appeal was as follows:
[[Image here]]
Plaintiff filed timely direct appeals with the Tax Court, contesting the local property assessment on the subject property for tax years 2009, 2010, and 2011. Defendant did not file counterclaims. Two witnesses appeared at trial: an appraiser called by plaintiff to *261 testify as an expert witness with respect to the value of the subject property, and a fact witness called by defendant who had knowledge of the subject property. The parties stipulated to plaintiffs expert witness’s qualifications. Trial took place over the course of two days. The court gave the parties the opportunity to submit post-trial briefs after the close of trial. Before the post-trial briefs became due, plaintiff filed a motion to re-open the record and admit supplemental documents into evidence. The court denied plaintiffs motion. The following findings of fact are based on the testimony of the trial witnesses and from the evidence accepted into the record.
The subject property consists of approximately .82 acres, located in the industrially developed area contained within the blocks north of Route 80 and south of Lodi Street. Most of the properties in the neighborhood are developed with one story masonry industrial buildings of varying sizes, mostly older properties developed some time ago; however, the neighborhood and surroundings are interspersed with some sporadic retail and even occasional residential detached dwellings.
The parties stipulated that the subject property is improved with a 20,210 square foot building. The building was built in or about 1966 and is considered to be in average condition. It is a one-story, masonry brick and steel frame constructed on a concrete slab, with a flat built-up roof. At the time of the valuation dates at issue, the majority of the building’s interior was painted masonry walls. The building is 100% sprinklered and heated with gas fired forced air. The storage and shop areas within the building have a suspended, eleven foot ceiling height. The building is equipped with two dock-high loading doors, as well as one overhead door. Parking is available on site. The subject property is located in the “C” industrial zone.
Plaintiffs expert submitted an appraisal report into evidence. The expert and report concluded that the highest and best use is “the current ‘as improved use’ of the subject property as a light industrial building both ‘as improved’ and ‘as if vacant.’ ” Plaintiffs report continues to read, “Research failed to identify any *262 other legally permitted use that produces a higher value.” Defendant’s witness presented facts and documents pertaining to the subject property, including a resolution passed by the South Hackensack Zoning Board of Adjustment, dated December 17, 2001, approving the Clemente Bakery Corporation for a use variance, parking variance and a site plan approval, which permitted space within the subject property to be utilized for non waiter/waitress sit down eating.
In the opinion of the plaintiffs expert, utilizing the income approach to valuation, the subject property had a true market value of $1,105,000 for 2009, $1,020,000 for 2010, and $970,000 for 2011[2]. Defendant’s witness did not offer an opinion of value because he was testifying as a fact witness. Defendant, instead, rested on the correctness of the assessment.
A. Plaintiff’s Expert’s Approach to Valuation
The plaintiffs expert’s report focused on the income approach, relying on this methodology because of the expert’s characterization of the subject property as “light industrial” and, as such, an investment-type property. For purposes of a full interior and exterior inspection in conjunction with preparing the report, plaintiffs expert inspected the property on June 8, 2011. The expert testified that portions of the building were vacant as of the date of his inspection, and, therefore, vacant during the valuation dates at issue. Furthermore, the expert testified that the subject is located in the “C” industrial zone and that the property conforms in terms of its use and occupancy, but it is illegal non-conforming as to the coverage of the lot. The expert also testified that the front portion of the building is set up as a public outlet for retail sale of goods that are made on the premises and some other retail goods that are not made on the premises. The expert characterized this public retail outlet and whatever square footage is allotted to office space within the building as “ancillary.”
*263 Plaintiffs expert testified that the income approach is guided by the conclusion of the highest and best use, which he found to be “as currently improved, an industrial building.” Therefore, plaintiffs expert analyzed rental transactions for industrial space in the market area.
Through cross-examination, plaintiffs expert revealed that he did not visit the building department in South Hackensack to review any documents pertaining to the subject property. Therefore, he was unaware of any of the following documents, until the date of trial:
a) Board of Adjustment Resolution, dated 12/17/01
(which permitted expansion of the then pre-existing non-conforming retail operation);
b) Application for Zoning Certifícate of Compliance, dated 11/22/05
(sign permit application);
c) Demolition plan, dated 10/6/08.
d) Application for Zoning Certificate of Compliance, dated 2/24/09
(use permit application, indicating “the property will continue to be used as a retail store/Clemente Bakery and wholesale manufacturing bakery/Central Bakery”);
e) Zoning Permit, dated 3/23/09; and,
f) Letter to Building Department, dated 7/12^10.
Utilizing four comparable leases for tax years 2009 and 2010 and an additional fifth comparable lease for 2011, plaintiffs expert calculated industrial, economic rental value to range between $4.50 to $6.00 per square foot on a net basis. It is important to note that all of plaintiffs expert’s comparables were one-story masonry industrial building leases. After adjustments to each comparable lease, the expert found the economic rental value for the subject property to be $5.50 per square foot for 2009, $5.25 per square foot for 2010, and $5.00 for 2011.
Next, plaintiffs expert selected a stabilized 7% vacancy and collection loss factor for each of the valuation dates at issue. He also calculated operating expenses for each of the valuation dates at issue to be as follows: 4% for management; 5% for commissions; 1% for miscellaneous; and $0.10 per square foot for reserves. Plaintiffs expert conducted a review of published studies and reports from nationally recognized sources, as well the use of *264 the Band of Investment technique to employ a capitalization rate of 8.25% for tax year 2009, 8.50% for tax year 2010, and 8.50% for tax year 2011.
As previously stated, plaintiffs expert concluded the true market value of the subject property, utilizing the stipulated square feet, to be $1,105,00 as of October 1, 2008, $1,020,000 as of October 1, 2009, and $970,000 as of October 1, 2010.
B. Defendant’s Approach
Defendant called a fact witness[3] to present the township’s direct ease. The fact witness testified to his familiarity with the history of the property, and his three inspections of the subject in his role as the appraiser for the municipality. Defendant’s witness testified that since 1985, or at least 2001, the subject property has been an industrial bakery with a retail operation, including a deli and counter service. He added that the property was sold to its current owner in 1990, and introduced the New Jersey Multiple Listing Service print-out indicating the sale. Defendant’s witness reviewed documents at the municipal building relating to the retail use approval for expansion in 2001, a zoning certificate of compliance in 2005, along with renovation plans filed in 2008, and multiple correspondences relating to same.
Unimpeaehed, defendant’s witness indicated to the court that, at all times relevant to the valuation dates at issue, the subject property was used as an integrated retail and bakery facility, and that in 2001 approvals were granted for expansion of the retail portion of the front of the building to include restaurant seating.

*265
II. Conclusions of Law

A. Presumption of Correctness

The court’s analysis begins with the well-established principle that “[original assessments and judgments of county boards of taxation are entitled to a presumption of validity.” MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J.Tax 364, 373 (Tax 1998). As Judge Kuskin explained, our Supreme Court has defined the parameters of the presumption as follows:
The presumption attaches to the quantum of the tax assessment. Based on this presumption the appealing taxpayer has the burden of proving that the assessment is erroneous. The presumption in favor of the taxing authority can be rebutted only by cogent evidence, a proposition that has long been settled. The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be “definite, positive and certain in quality and quantity to overcome the presumption.”
[Ibid. (quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413, 495 A.2d 1308 (1985)).]
The presumption of correctness arises from the view “that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law.” Pantasote, supra, 100 N.J. at 413, 495 A.2d 1308 (citing Powder Mill, I Assocs. v. Township of Hamilton, 3 N.J.Tax 439 (Tax 1981)); Township of Byram v. Western World, Inc., 111 N.J. 222, 544 A.2d 37 (1988). The presumption remains “in place even if the municipality utilized a flawed valuation methodology, so long as the quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity.” Transcontinental Gas Pipe Line Corp. v. Township of Bernards, 111 N.J. 507, 517, 545 A.2d 746 (1988) (citation omitted).
“The presumption of correctness ... stands, until sufficient competent evidence to the contrary is adduced.” Township of Little Egg Harbor v. Bonsangue, 316 N.J.Super. 271, 285-86, 720 A.2d 369 (App.Div.1998) (citations omitted); see also Atlantic City v. Ace Gaming, LLC, 23 N.J.Tax 70, 98 (Tax 2006). “In the absence of a R. 4:37-2(b) motion ... the presumption of validity remains in the case through the close of all proofs.” MSGW Real *266 Estate Fund, LLC, supra, 18 N.J.Tax at 377. In making the determination of whether the presumption has been overcome, the court should weigh and analyze the evidence “as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion.” Ibid. The court must accept as true the proofs of the party challenging the assessment and accord that party all legitimate favorable inferences from that evidence. Id. at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 666 A.2d 146 (1995)). To overcome the presumption, the evidence “must be ‘sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.’ ” West Colonial Enters., LLC v. City of East Orange, 20 N.J.Tax 576, 579 (Tax 2003) (quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J.Tax 405, 408 (Tax 1999), aff'd, 18 N.J.Tax 658 (App.Div.2000), certif. denied, 165 N.J. 488, 758 A.2d 647 (2000)). Only after the presumption is overcome with sufficient evidence at the close of trial must the court “appraise the testimony, make a determination of true value and fix the assessment.” Rodwood Gardens, Inc. v. City of Summit, 188 N.J.Super. 34, 38-39, 455 A.2d 1136 (App.Div.1982) (citations omitted). If the court determines that sufficient evidence to overcome the presumption has not been produced, the assessment shall be affirmed and the court need not proceed to making an independent determination of value. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 312, 604 A.2d 580 (1992); Global Terminal & Container Serv. v. City of Jersey City, 15 N. J.Tax 698, 703-704 (App.Div.1996).
At the close of plaintiffs case-in-chief, defendant moved to dismiss the case for failure to overcome the presumption. The court found that plaintiff produced sufficient evidence to overcome the presumption of validity attached to the assessment. The court explained that, if taken as true, the opinion of plaintiffs expert and the facts upon which he relied created a debatable question regarding the correctness of the assessment sufficient to allow the court to make an independent determination of the value of the *267 subject property. The court indicated that it was a very close decision at that juncture of the case, particularly, regarding the use of the subject property and the approvals that may or may not have been in place at the valuation dates at issue. Furthermore, the court elaborated that although the defendant’s motion was being denied, the plaintiffs evidence may still not prove that the assessment requires adjustment.
Of course, the ruling of the court that plaintiff had overcome the presumption of correctness does not equate to a finding that the assessment is erroneous. To the contrary, plaintiffs overcoming the presumption merely permits the court to address the question of what value should be accorded to the subject property. Once the presumption is overcome, the “court must then turn to a consideration of evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence.” Ford Motor Co., supra, 127 N.J. at 312, 604 A.2d 580 (quotations omitted). “[Although there may have been enough evidence to overcome the presumption of correctness at the close of plaintiffs case-in-chief, the burden of proof remain[s] on the taxpayer throughout the entire case ... to demonstrate that the judgment under review was incorrect.” Id. at 314-15, 604 A.2d 580 (citing Pantasote, supra, 100 N.J. at 413, 495 A.2d 1308).

B. Highest and Best Use

For property tax assessment purposes, property must be valued at its highest and best use. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 300-01, 604 A.2d 580 (1992). “Any parcel of land should be examined for all possible uses and that use which will yield the highest return should be selected.” Inmar Associates Inc. v. Township of Edison, 2 N.J.Tax 59, 64 (Tax 1980). Accordingly, the first step in the valuation process is the determination of the highest and best use for the subject property. American Cyanamid Co. v. Township of Wayne, 17 N.J.Tax 542, 550 (Tax 1998), aff'd, 19 N.J.Tax 46 (App.Div.2000). “The concept of highest and best use is not only fundamental to valuation but is a crucial determination of market value. This is *268 why it is the first and most important step in the valuation process.” Ford Motor Co. v. Township of Edison, 10 N.J.Tax 153, 161 (Tax 1988), aff'd o.b. per curiam, 12 N.J.Tax 244 (App.Div. 1990), aff'd, 127 N.J. 290, 604 A.2d 580 (1992); see also Gen. Motors Corp. v. City of Linden, 22 N.J.Tax 95, 107 (2005).
The definition of highest and best use contained in The Appraisal of Real Estate, a text frequently used by this court as a source of basic appraisal principles, has remained relatively constant for all of the years under appeal. Highest and best use is defined as:
The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, and financially feasible and that results in the highest value.
[Appraisal Institute, The Appraisal of Real Estate, 22 (13th ed.2008).]
The highest and best use analysis requires sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive. Ford Motor Co., supra, 10 N.J.Tax at 161; see also The Appraisal of Real Estate at 279. Implicit in this analysis is the assumption that the proposed use is market-driven; in other words, that it is determined in a value-in-exehange context and that there is a market for such use. WCI-Westinghouse v. Township of Edison, 7 N.J.Tax 610, 616-17 (Tax 1985), aff'd o.b. per curiam, 9 N.J.Tax 86 (App.Div.1986). A highest and best use determination is not based on value-in-use because the determination is a function of property use and not a function of a particular owner’s use or subjective judgment as to how a property should be used. See Entenmann’s Inc. v. Borough of Totowa, 18 N.J.Tax 540, 545 (Tax 2000). The highest and best use of an improved property is the “use that maximizes an investment property’s value, consistent with the rate of return and associated risk.” Ford Motor Co., supra, 127 N.J. at 301, 604 A.2d 580. Further, the “actual use is a strong consideration” in the analysis. Ford Motor Co., supra, 10 N.J.Tax at 167.
Highest and best use is not determined through subjective analysis by the property owner. The Appraisal of Real *269 Estate at 279. The proper determination of highest and best use requires a comprehensive market analysis to ascertain the supply and demand characteristics of alternative uses. See Six Cherry Hill, Inc. v. Township of Cherry Hill, 7 N.J.Tax 120, 131 (Tax 1984), aff'd, 8 N.J.Tax 334 (App.Div.1986). Additionally, the proposed use must not be remote, speculative, or conjectural. Id. If a party seeks to demonstrate that a property’s highest and best use is other than its current use, it is incumbent upon that party to establish that proposition by a fair preponderance of the evidence. Penns Grove Gardens, Ltd. v. Borough of Penns Grove, 18 N.J.Tax 253, 263 (Tax 1999); Ford Motor Corp., supra, 10 N.J.Tax at 167. Property should be assessed in the condition in which it is utilized and the burden is on the person claiming otherwise to establish differently. Highview Estates v. Borough of Englewood Cliffs, 6 N.J.Tax 194, 200 (Tax 1983).
“Highest and best use often comprises more than one use for a parcel of land or an improved property.” The Appraisal of Real Estate at 293. One parcel of land may serve many functions. Id. A single building can have multiple uses as well. Id. The appraiser is guided: “if the highest and best use of a property is for more than one use on the same parcel or in the same building, the appraiser must estimate the contributory value of each use.” Id. at 293-94. The highest and best use conclusion should specify the optimal use (or uses), when the property will be put to this use or achieve stabilized occupancy, and who would be the most likely purchaser or user of the property. Id. at 139.
Here, plaintiffs expert testified that the income approach is guided by the conclusion of the highest and best use, which he found to be “as currently improved, an industrial building.” Plaintiffs expert’s report supports this testimony by indicating, “It is our opinion that the current ‘as improved use’ of the subject property as a light industrial building represents its Highest and Best Use both ‘as improved’ and ‘as if vacant.’” Plaintiffs expert’s report added, “Research failed to identify any other legally permitted use that produces a higher value. The current use meets or exceeds the criteria set forth above for a use to be considered the Highest and Best Use.” Through cross-examina *270 tion, plaintiffs expert revealed that he did not visit the building department in South Hackensack to review any documents pertaining to the subject property. Therefore, he was unaware of any of the following documents, until the date of trial:
a) Board of Adjustment Resolution, dated 12/17/01
(which permitted expansion of the then pre-existing non-conforming retail operation);
b) Application for Zoning Certificate of Compliance, dated 11/22/05
(sign permit application);
c) Demolition plan, dated 10/6/08.
d) Application for Zoning Certificate of Compliance, dated 2/24/09
(use permit application, indicating “the property will continue to be used as a retail store/Clemente Bakery and wholesale manufacturing bakery/Central Bakery”);
e) Zoning Permit, dated 3/23/09; and,
f) Letter to Building Department, dated 7/12/10.
In this case, plaintiff’s expert failed to acknowledge the actual use of this property, as an integrated bakery facility including the variance for the retail and restaurant use. Plaintiff’s expert failed to give any weight to the 2001 zoning approval for expansion of the retail component. Furthermore, the expert was completely unaware of the approval and permit until the date of trial. In turn, plaintiffs expert’s failure to consider the approval and permit in his determination of highest and best use means that he did not include and value all of the interests in the subject property. See In re Appeal of Neptune Tp., 86 N.J.Super. 492, 207 A.2d 330 (App.Div.1965); Borough of Secaucus v. Damsil, Inc., 120 N.J.Super. 470, 295 A.2d 8 (App.Div.1972); Borough of Paramus v. Etaner Enterprises, 14 N.J.Tax 208, 214 (Tax 1994) (as a general rule, all interests in property must be valued for ad valorem tax purposes); see also Stack v. City of Hoboken, 45 N.J.Super. 294, 300, 132 A.2d 314 (App.Div.1957) (the law requires an assessment of the value, not of the purported owner’s title, but of the land; the assessed value of the land represents the value of all interests in the land). Plaintiffs expert’s ignorance of the approval and permit are especially curious in light of plaintiffs own application for zoning certificate of compliance, dated 2/24/09, indicating that the subject property “will continue to be used as a retail store and wholesale manufacturing bakery, central bakery.” *271 Plaintiffs expert’s failure to consider these interests impacts the highest and best use analysis.
The subject property is located in the “C — Industrial Zone,” which is the municipality’s most comprehensive zone for industrial-use properties. Plaintiffs expert’s report includes a copy of the permitted uses within the zone, and of importance is item # 17: “baking and preparation of food not to be consumed on premises.” The Board of Adjustment resolution, dated 12/17/01, states that the Clemente Bakery Corporation is approved and “permitted to utilize 840 square feet of the existing building for non waiter-waitress sit down eating of foods prepared and available on the Premises ...” This characterization of the subject property is quite different than plaintiffs expert’s description and highest and best use conclusion; namely, the subject is being used as “light manufacturing and warehouse.” For these reasons, the court finds that plaintiffs expert’s conclusion of highest and best use is faulty.
Plaintiffs expert continuously reiterated that he valued the subject as vacant and as a general industrial building, noting that he did not appraise “a value specific to this property, but rather, the market value of the property.” In that regard, he admitted being unaware of the zoning permit for retail and restaurant use, and explained that the permits added no value to the property. Implied in the definition of highest and best use is that the “determination results from the appraiser’s judgment and analytical skill, i.e. that the use determined from analysis represents an opinion, not a fact to be found.” Linwood Properties, Inc. v. Borough of Fort Lee, 7 N.J.Tax 320, 327 (Tax 1985). “However, that is not to say that a mere opinion of highest and best use is acceptable.” Id. “[A]n expert’s opinion is only as good as the data upon which the expert relied.” Greenblatt v. City of Englewood, 26 N.J.Tax 41, 54-55 (Tax 2010); see also Dworman v. Borough of Tinton Falls, 1 N.J.Tax 445, 458 (Tax 1980) (An expert’s opinion “depends upon the facts and reasoning which form the basis of the opinion. Without explanation as to the basis, the opinion of the expert is entitled to little weight in that regard.”). As explained in the Appraisal of Real Estate, various uses which are legally *272 permissible must be tested to determine which produces the highest value. The Appraisal of Real Estate at 279. Plaintiffs expert was unaware of any other legally permissible uses, and, therefore, failed to conduct a proper highest and best use test.
“It is not the mere opinion of appraisers as to highest and best use that is important, but rather the activities of buyers and sellers in the market place.” Linwood Properties, Inc., supra, 7 N.J.Tax at 327. As explained earlier, a proper highest and best use analysis requires a comprehensive market analysis to ascertain the supply and demand characteristics of alternative uses. See Six Cherry Hill, Inc., supra, 7 N.J.Tax at 131. In order to constitute a particular use as the property’s highest and best use, the selected use in value in exchange context must be a probable use for which there must be a demand in the relevant market. WCI-Westinghouse v. Township of Edison, 7 N.J.Tax 610, 616 (Tax 1985). Plaintiffs expert testified that the subject property has a singular, highest and best use, that of an industrial building. He further testified that ancillary use in industrial buildings is commonly office space, but, in this case, the office use is “nominal and the ancillary use is more of a retail nature.” He went on to indicate that there was no market for ancillary space of retail in an industrial building. However, plaintiffs expert provided no market study or estimate of market demand. Without any explanation as to the basis of the testimony that there is no market for ancillary retail and office space, the court gives no weight to plaintiffs expert’s opinion. Plaintiffs expert failed to visit the building department to view relevant documents that add to the value of the subject property. Plaintiff’s expert’s failure to provide an adequate, independent analysis, or investigation is detrimental to his analysis. The court will not accept plaintiffs expert’s opinion without any market data or analysis and without valuing the property in its totality with all approvals and permits in place.

C. Plaintiff’s Expert’s Income Approach

Plaintiff’s expert’s income approach is guided by the conclusion of the highest and best use, which this court found to be without merit. The Appraisal of Real Estate cautions:
*273 To determine highest and best use, the appraiser must analyze data, not just compile it ... It is critical that a careful highest and best use analysis precede the application of the approaches to value. Otherwise, there is a high likelihood that serious errors will be made in the valuation process.
[Appraisal Institute, The Appraisal of Real Estate, 277 (13th ed.2008).]
Plaintiffs expert utilized four comparable leases for tax years 2009 and 2010, and an additional fifth comparable lease for 2011. All of plaintiffs expert’s comparables were one-story masonry industrial building leases. None of these comparables had any retail component.
The first reason to analyze the highest and best use of the subject property as improved is to help identify potentially comparable properties. The Appraisal of Re,al Estate at 139. “Potentially comparable properties that do not have the same highest and best use are usually eliminated from further analysis.” Id. Although the textbook is referring to comparables in the sales-comparison approach, the same logic and analysis applies to the income approach comparables utilized to determine market rent.
An appraiser must recognize the difference between the highest and best use of a comparable and the subject, and determine if the sale is an appropriate comparable. See General Motors Corp. v. City of Linden, 22 N.J.Tax 95, 102 (Tax 2005) (citations omitted). In fact, a “judge may reject a property as a comparable solely because it has a different highest and best use.” City of Atlantic City v. Boardwalk Regency Carp, 19 N. J.Tax 164, 189 (App.Div.2000); See also Newport Center v. City of Jersey City, 17 N.J.Tax 405, 418-25 (Tax 1998) (excluding from evidence sales having highest and best uses so dissimilar to the highest and best use of the subject property as to render the sales of no assistance to the court in valuing the subject property).
The comparable leases chosen by plaintiffs expert are given no weight because they were selected in the absence of a proper highest and best use analysis. Consequentially, the rental value component of the income approach by plaintiffs expert is faulty. Plaintiffs expert’s use of comparable leases to determine market rent neither allows the court to “draw rational probative valuation inferences,” nor lends “logical, coherent support” to an opinion of *274 value. See Newport Center, supra, 17 N.J.Tax at 420. Therefore, plaintiffs expert’s entire income approach is inapplicable as a matter of law.

III. Conclusion

Plaintiff has failed to sustain the requisite burden of proof necessary to alter the assessment for tax years 2009, 2010, and 2011. Accordingly, the Tax Court Clerk is directed to enter judgment in favor of defendant affirming the assessments on the subject property for tax years 2009, 2010, and 2011.

 These figures were calculated using the stipulated square feet of the subject, rather than the square feet that were cited in the expert’s brief.

 Defendant's witness was permitted to testify as a fact witness by the court over plaintiff's counsel's objection. The court found that defendant's witness was named in two separate and distinct answers to interrogatories: # 1. as a fact witness; and # 2. as an expert. Since the defendant named the witness in response to question # 1, (... person known who has knowledge of facts bearing upon or relating to this appeal or the subject property ...) the court found no surprise, and overruled the objection.

 In tax year 2010, South Hackensack underwent a complete revaluation; therefore, the average ratio does not apply.