LARIO, J. T. C.
Plaintiff has filed local property tax appeals for the tax year 1978 for premises known as Block 255, Lot 3, and Block 255, Lot 5, which are land and buildings popularly known as the Pennsauken Merchandise Mart. By stipulation, the cases were consolidated for trial.
The assessments appealed from are as follows:
Original Assessment County Tax Board Action
Lot 5 Lot 3 Lot 5 Lot 3
Land $ 964,300 42,600 964,300 42,600
Improvements $3,005,100 -0-2,688,524 -0-
Total $3,969,400 42,600 3,652,824 42,600
The premises under appeal is a shopping center located at the intersections of Route 130, New Jersey State Highway 73 and Haddonfield Road. It is zoned C-l Commercial. Route 73 is a dual highway which is a direct access road leading to the Tacony-Palmyra Bridge located approximately three miles westward from the subject property. The bridge spans the Delaware River, connecting South Jersey with the northeast section of the City of Philadelphia.
The total land area consists of 30.31 acres, is fairly level with street grade, and is developed with 13 individual free-standing, one-story, commercial-type properties that are similar in architectural style and building materials to the other surrounding improvements.
*278 During the course of the trial it was stipulated that the State of New Jersey had acquired part of the subject site adjacent to New Jersey State Highway, Ramp A, and Haddonfield Road. This land acquisition reduced the overall land area from 35.77 acres to 30.31 acres. It was further agreed that the original land assessment of $964,300 on Lot 5 and $42,600 on Lot 3 represented their true value prior to the taking by the State, and, that as a result of the acquisition the true value of the remaining total land value on this land is $889,300. It was further agreed that this value is allocated $846,700 to Lot 5 and $42,600 to Lot 3.
The only issue remaining to be decided is the true value of the improvements.
Plaintiff’s expert valued the total of land and improvements to be $2,000,000, relying upon the market capitalization approach. Although he reproduced the large Mart building, he did not utilize this method for the other 12 buildings.
Defendant’s expert appraised the subject property by use of both the capitalization approach and the reproduction approach. However, in arriving at his final opinion of value he relied upon the former, using the latter result as a check. By his income method he arrived at a total true value of $3,861,000, allocating $889,250 to the land and $2,972,550 to the improvements.
Defendant’s expert stated that due to the absence of sales of structures similar to those located in the shopping complex, he did not utilize the market data approach.
Plaintiff’s expert stated that because of the unusual nature of the land area, road accessibility and the size and occupancy of the buildings, there were few properties similar to the subject in the Philadelphia-Metropolitan area; nevertheless, he did consider three sales which, he claimed, have numerous degrees of comparability.
His first sale was located across Haddonfield Road from the subject property and it contained but a single building. It was smaller in both building and land size. Its accessibility is very *279 poor, having no direct access from Route 73 and Route 130, and it is not visible to motorists on Route 130. He attempted to compare this building solely to the large Mart building and did not take into consideration the remaining improvements of the subject property.
The second sale was also a single building, smaller in size, and its accessibility to traffic was extremely poor. He made the same limited comparison to a single building as with the first sale.
The third sale property is located in Pennsylvania and does not have the location and accessibility that the subject property has. In addition, its physical layout differs and its architectural style and building materials are not similar.
In plaintiff’s appraisal report he impliedly agrees with defendant’s conclusion that by reason of the unusual nature of the road accessibility and the size and occupancy of the buildings on the subject property, there were few similar properties within the area, and this conclusion was amply supported by the testimony and photographs submitted.
The only possible value of attempting to analyze any sales within the area would be to establish a generalized land value; they certainly would be of no value in determining an improvement value. Since the parties have stipulated the land’s true value, I cannot understand plaintiff’s purpose in placing these sales into evidence, or the conclusion to be drawn therefrom.
I find that the offered sales are not reasonably comparable and therefore no weight is assigned to them or to plaintiff’s market conclusion. See Venino v. Carlstadt, 1 N.J.Tax 172, 174, 175 (Tax Ct.1980), aff’d - N.J. Super. - (App.Div.1981).
I conclude that the most acceptable method that would be employed by a willing seller and buyer to evaluate the purchase price for the subject property is the capitalization approach.
The subject property is leased by plaintiff, a partnership, under a 20-year lease which originated in 1960 and has two *280 successive options of 20 years each. All improvements on the property were built by plaintiff; however, at the expiration of the lease all buildings and improvements remain the property of the lessor.
Included in the lease are two separate shopping marts — the subject property and a shopping mart located in Montgomery-ville, Pennsylvania. It was stipulated that the rent paid thereunder chargeable to plaintiff is $179,998.65 a year. It was testified that this rental was an allocation made by a certified public accountant. No attempt was made by either expert to establish that this arbitrary rental represented the economic rental of the value of the land and added improvements as of the assessing date.
In arriving at his value by way of the income approach, plaintiff’s expert considered the rentals received from subtenants for the years 1976, 1977 and 1978 and stabilized the income at an annual rate of $1,320,000. He also used the expenses for these three years which he stabilized at $950,000, giving him a net income of $370,000. He attributed $149,467 to the land by applying a rate of 15.5% (12% interest plus 3.50 tax factor— rounded), which left $220,533 attributable to building. He capitalized this balance by 20.50% (12% interest plus 3.50 tax factor (rounded) plus 5% recapture) to arrive at a building value of $1,075,770.
Included in the expenses deducted by plaintiff’s expert was the ground rental of $179,998.65 paid to the owner. Also included were taxes of $79,936.44, $106,621.39 and $45,806.26 for 1976, 1977 and 1978, respectively.
In arriving at his conclusion of value, defendant’s expert capitalized each of the buildings separately, using for each building’s economic rent an allocation percentage of rentals received. He also used an allocation percentage for expenses. In allocating the expenses he applied 96.75% of the operating expenses to Mart buildings Nos. 1 and 9 and 3.25% was applied to the remaining buildings. He explained this latter low figure by the fact that many of the subleases for the remaining *281 buildings in the complex are net leases, with other leases calling for a percentage of gross sales as an added rent to the base rent. However, by reason of lack of evidence concerning all of the details of these leases, it cannot be determined whether the percentages of allocations are correct.
By this individualized capitalization method, defendant’s expert arrived at a building value of $1,749,133 for the large buildings Nos. 1 and 9 and $1,223,562 for the remaining buildings, which resulted in his total building value of $2,972,695, which he rounded out to $2,972,550. Adding to this his land value of $889,250 resulted in a true value of $3,861,800.
This expert also prepared an alternate appraisal valuing the leased fee by capitalizing the existing lease’s ground rental and arriving at an alternate value of $1,882,708 for the present worth of the income stream in land and reversionary value, for a total by this method of $4,855,403.
The main issue presented in this case is what effect is to be given to the ground lease and how should that expense be treated. All real property is subjected to local taxation in New Jersey by authority of N.J.S.A. 54:4-23, which mandates that
All real property shall be assessed to the person owing the same on October 1 in each year. The assessor shall ... determine the full and fair value of each parcel of real property ... at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments.... [Emphasis supplied]
We begin with the proposition that “the search of course is for the fair value of the property, the price a willing buyer would pay to a willing seller.” New Brunswick v. Tax Appeals Div., 39 N.J. 537, 543, 189 A.2d 702 (1963). In establishing that fair value it must first be ascertained what property rights are to be included.
This question was addressed in Koester v. Hunterdon Cty. Bd. of Tax., 79 N.J. 381, 399 A.2d 656 (1979), wherein Justice Jacobs, speaking for our Supreme Court, stated:
N.J.S.A. 54:4-23 directs that each parcel of “real property” be assessed for taxation at its full and fair value. It does not embody any statutory definition but the courts have properly given it expansive meaning in the light of the broad *282 legislative objectives. Thus, the parcel referred to has been held to include the land and its “concomitant improvements.” City of Newark v. West Milford Tp., Passaic County, 9 N.J. 295, 304 [88 A.2d 211] (1952). And the aggregate tax is a lien on the entire fee even where there is separate ownership of the land and the improvement. Crewe Corp. v. Feiler, 28 N.J. 316, 320 [146 A.2d 458] (1958); Becker v. Little Ferry, supra, 126 N.J.L. 338. [at 392, 19 A.2d 657]
It is basic in valuing real property for tax purposes that the independent holding of separate legal interests in the taxable property does not affect the method of valuing and assessing the total property. In Stack v. Hoboken, 45 N.J.Super. 294, 300, 132 A.2d 314 (App.Div. 1957), it was held that “The law requires an assessment of the value, not of the purported owner’s title, but of the land; the assessed value of the land represents the value of all interest in the land. N.J.S.A. 54:3-23. Cf. N.J.S.A. 54:4-54.” [39 N.J. at 300, 189 A.2d 702].
It is axiomatic that for purposes of local real estate taxation in the State of New Jersey, land and improvements are to be assessed at their total full value and not just the interest of either a lessor or a lessee. New Brunswick, at 544, 189 A.2d 702. See also, Jersey City v. Harborside Warehouse Co., 19 N.J.Misc. 222 (Bd. of Tax.App. 1941), 17 A.2d 572 and Secaucus v. Damsil, 120 N.J.Super. 470, 474, 295 A.2d 8 (App.Div. 1972).
In the appraisal report submitted in evidence by plaintiff’s expert appears the following:
The largest estate in real property that an owner can have is an estate in fee simple. It is unconditional and absolute ownership. Fee simple ownership is described as the sum total of all other estates, each of which is but a part of the whole fee simple estate and is carved out of it.
The property rights appraised in this report were in fee simple.
However, contrary to this statement the expert testified as follows:
I appraised anyone’s purchasing Mr. Sternberger’s [plaintiff-co-partner] interest in the property. I appraised his rights and interest in real estate. He does not have the right of the ownership of land. He has the right and ownership in improvements and because of the length of leases and options he has considerable interest in the property.
Later, when he was asked whether it is proper appraisal technique to deduct as an expense the ground rental paid by plaintiff, he responded: “Under the parameters of this assign *283 ment, I’d say yes. . .to have the rights of the income of this property you certainly have to pay the ground rent.”
From the above statements it is clear that the property rights appraised by plaintiff’s expert were not the fee simple interest of the subject property, but instead, he appraised solely the tenant’s interest in the property. This tenant’s interest certainly is not the total property that is the subject matter of this assessment as required by N.J.S.A. 54:4-23.
In addition, plaintiff’s overall appraisal technique is difficult to comprehend. Although he testified that he arrived at his economic rent by stabilizing actual rents collected over a three-year period, he deducted as an expense bad debts which he described as uncollected rents. There is no way to ascertain whether the uncollected rents were caused by problems with the property or simply by a delinquent or absconding debtor. Unexplained, uncollected rents do not equate with, nor can they be substituted for, a proper vacancy factor; contrary to plaintiff’s claim, the fact that plaintiff is on an accrual accounting basis does not mandate the use of said uncollected rents. “[Ejquality in the distribution of the burden of local government upon taxable real property is the basic goal.... The thought is that things equal to each other in the context of the local real-property tax involved shall be treated equally.” Switz v. Kingsley, 37 N.J. 566, 572, 182 A.2d 841 (1962) (cited with approval in Glenwood Realty Co., Inc. v. East Orange, 78 N.J.Super. 67, 72, 187 A.2d 602 (App.Div. 1963).
It was testified that real estate taxes were paid by the lessees; in lieu thereof, I am unable to understand why this expert deducted the taxes as an expense and why there is a disparity in taxes from $106,621.39 in 1977 to $45,806.26 in 1978. It is possible that this difference may have been caused by the variance in real estate taxes collected from some subtenants; however, this court may not so conclude without proper evidence nor can its effect be analyzed. He did not explain why he included the tax rate, which was not totally plaintiff’s expense, within the capitalization figure, nor why he used a rounded-out *284 higher rate rather than the actual tax rate. Although the difference may seem small, when capitalized the result could be substantial.
Plaintiff complains that since the subject property is not subdivided, defendant’s method of valuing each building separately was improper. Plaintiff misunderstands defendant’s method of appraisal. If defendant’s expert were utilizing the market approach and had he attempted to divide the land and buildings into smaller tracts which he compared to comparable sales, this method would have been improper. Instead, he utilized an income approach and allocated a separate economic rental to each building and added thereon a proportionate land value. Since the land value was stipulated and the total of all defendant’s segregated land values equaled the stipulated value, defendant’s method cannot be deemed erroneous.
From defendant’s appraisal it is apparent that some subtenants had net leases, others did not, and some paid taxes in excess of base taxes. The buildings were differently constructed and built during different years. By reason of these dissimilarities defendant’s method of individual analysis of each building appears to lean to a more accurate valuation than plaintiff’s method of aggregating all taxes, risk and recapture rates.
By reason of the discrepancies and questions raised by plaintiff’s expert’s data and the method by which he applied same, and since his final opinion of value did not include the fee simple interest of the subject property, but only the lessee’s interest, this court cannot accept this expert’s opinion of value. For the same reasons this court cannot reconstruct plaintiff’s appraisal to independently arrive at a true value. Glenwood Realty Co., Inc. v. East Orange, supra at 73, 187 A.2d 602.
In addition, I cannot ignore the evidence presented concerning the sale of the subject property which lists a consideration of $3,825,000. Although neither party gave any clear and definite details surrounding the terms of this sale, N.J.S.A. 2A:83-1 provides that
*285 In any action or proceeding in the Tax Court, the realty transfer fee, if any, paid upon the recording of any deed or other instrument of conveyance as well as the consideration or sales price stated therein or in the affidavit of consideration attached to and filed with any such deed or instrument shall be admitted as prima facie evidence of the true consideration or sales price of the said property. [Emphasis supplied]
Since this sale covers the very property under appeal, in order to lessen or eliminate its probative value the party attacking its validity had the burden to present evidence as to why it should not be considered. Such evidence has not been offered, although plaintiff-partner described this sale as not being an arms-length transaction, without giving sufficient proofs to support this claim.
There is a presumption that a judgment of a county board of taxation is correct and the burden of proof is upon appellant to show otherwise. This “presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Such evidence must be definite, positive and certain in quality and quantity to overcome the presumption.” Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952). The evidence presented by plaintiff was poor in quality and far from convincing.
I conclude that plaintiff has failed to meet its burden of proof; therefore, the judgment of the county board as it relates to the improvement assessment is affirmed.
By reason of the stipulation entered into between the parties, the land assessment will be reduced as agreed. Therefore, judgments will be entered as follows:
A. In the appeal covering Block 255, Lot 3, the county board judgment for the land of $42,600 is affirmed.
B. In the appeal covering Block 255, Lot 5, the county board judgment is reduced as follows:
Land $ 846,700
Improvements $2,688,524
Total $3,585,224
*286 It having been stipulated subsequent to trial that the findings of fact and conclusions of law for the 1978 appeals would apply to the 1980 appeals, it is ordered that identical judgments will also be entered for both lots for the tax year 1980.