LARIO, J.T.C.
Plaintiffs, taxpayers of Medford Township, filed an appeal with the Burlington County Board of Taxation seeking an increase in the assessment of $13,550 for the tax year 1982 *420 placed on premises owned by defendant, Mimosa Lakes Association (MLA), known as Block 6303, Lot 9 on the tax map of Medford Township. The county board affirmed the assessment resulting in this appeal.
The question presented is: What interests are to be considered in determining the true value of the lot under appeal? It was stipulated that the material facts are as follows: The subject property is located within a residential community created by Medford Lakes Development Company. Medford Lakes’ subdivision, created by filed deed, consists of two connecting lakes, Upper Mimosa Lake and Lower Mimosa Lake, surrounded by 57 residential properties plus the subject lot. A majority of the lots, together with the subject lot (which is also referred to as the “club beach lot”), are lakefront properties.
The development company conveyed title for the common property within the subdivision, which included the subject property, to defendant, MLA, in consideration of “ONE DOLLAR and in furtherance of and in conformity with the restrictions and privileges as expressed in the many deeds out of Medford Development Company for the various lots in Mimosa Lakes.”
Deeds from the development company conveying title of the residential properties contained many restrictions one of which is:
8. The ownership and control of the two lakes and the club beach within the development have been conveyed by the grantor to the Mimosa Lakes Association, an organization created by the owners of lots within the development. The use and privileges thereof shall be strictly limited to the approval and consent of the Mimosa Lakes Association and the rules and regulations established or to be established by it.
Subsequently there was recorded a deed from MLA to itself reconveying the common property described as “tracts 1 and 2” which included the club beach lot. This deed contains the following:
It is hereby imposed upon the above described tracts 1 and 2 the following restrictions:
The above described tracts 1 and 2 being subject to restriction that such land shall be used for the recreation and enjoyment of the members of the Mimosa *421 Lakes Association as, and for, a beach and general recreation area, and no structure, other than those necessary for the above purposes, shall be constructed thereon.
The property involved is a vacant lot located on the corner of Pontiac Drive and Shanty Dam Drive. It has 125 feet of frontage on Pontiac Drive and slopes gradually to the waters of Upper Mimosa Lake. It is zoned for single-family dwellings. It is used by the members of Mimosa Lakes Association to provide access to the lake for recreational purposes.
MLA was incorporated as a nonprofit corporation for the sole purpose of holding legal title to the aforesaid conveyed common property and maintaining the club beach lot as a recreational facility restricted solely for its members. Membership in the association is restricted to those persons owning the 57 properties in the subdivision. There are no restrictions of any kind against any potential purchaser of the property in Mimosa Lakes and eligibility for membership in the association by a purchaser is automatic upon transfer of title.
Plaintiffs, whose dwelling is located on a lot bordering the Mimosa Lakes subdivision, but not included therein, have been refused membership in the association because their property is not located within the Mimosa Lakes subdivision thereby making them ineligible for membership. However, no resident of property located within the Mimosa Lakes subdivision has ever been refused membership.
Plaintiffs and three other owners of properties similarly situated requested Mimosa Lakes Association to amend its by-laws to expand the boundaries; however, the membership declined to expand membership eligibility to the owners of properties beyond the original subdivision, but future consideration of this proposal was not foreclosed.
The assessor has assessed the property as “recreation beach area” since its subdivision in 1966. Based upon this use the lot is assessed at its present assessment of $13,550. Plaintiff alleges that the property is assessed at less than true market value, contending that the township erred in basing the value of the real estate for tax assessment purposes upon the character *422 of the title held by the taxpayer rather than the value of the land itself.
On the other hand, the defendants argue that the market value of the property is affected by the deed limitations on marketability and that the deed restrictions are all part of “a neighborhood scheme” whereby, although the subject lot is unmarketable, it represents an increment in the value of all the beach-eligible and lakefront properties in Mimosa Lakes and that value is reflected in the tax assessments of the latter properties. In support of this contention defendants present the hypothetical argument that in the event the beach property were sold for development (claiming that this supposition is purely hypothetical in that it cannot be sold), the values of properties throughout the development would plummet instantly and so would their tax assessments. ■
Defendants further urge that since the restrictions are part of “a neighborhood scheme” the restrictions which are part of the original developer’s plan for maintenance of the community property is enforceable by each of the members, therefore, the properties which are subject to this enforceable “neighborhood scheme” could not be marketed as building lots.
New Jersey’s Constitution requires that all real property “shall be assessed according to the same standard of value,” N.J. Const. (1947), Art. VIII, § I, par. 1, except for property exempted from taxation by general, laws, N.J. Const. (1947), Art. VIII, § I, par. 2.
The pertinent legislation implementing this constitutional provision requires that local property tax assessments are to be made each year on all real property in this State not expressly exempted from taxation, N.J.S.A. 54:4-1; and, the assessor is directed “to determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it will sell for at a fair and bona fide sale by private contract on October 1” of the pretax year. N.J.S.A. 54:4-23.
*423 These constitutional and legislative provisions have been interpreted by our courts to include within the meaning of full and fair value the totality of all interests in the property. As stated by our Supreme Court in Koester v. Hunterdon County Bd. of Taxation, 79 N.J. 381, 399 A.2d 656 (1979),
N.J.S.A. 54:4-23 directs that each parcel of “real property” be assessed for taxation at its full and fair value. It does not embody any statutory definition but the courts have properly given it expansive meaning in the light of the broad legislative objectives. Thus, the parcel referred to has been held to include the land and its “concomitant improvements.” City of Newark v. West Milford Tp., Passaic County, 9 N.J. 295, 304 [88 A.2d 211] (1952). And the aggregate tax is a lien on the entire fee even where there is separate ownership of the land and the improvement. Crewe Corp. v. Feiler, 28 N.J. 316, 320 [146 A.2d 458] (1958); Becker v. Little Ferry, supra, 126 N.J.L. 338. [at 392, 19 A.2d 657]
In establishing the “fair and bona fide sale value” of the subject property it must first be ascertained exactly what real property rights are to be included. Should the lot in question be valued based upon its restricted beach property use; or, should it be valued as though its use were unrestricted, therefore, useable as a building lot? All parties have stipulated that if the first method is proper the present assessment is correct; however, if the proper method is the latter, then in that event the correct assessment shall be $19,700.
Real property is defined in the American Institute of Real Estate Appraisers, The Appraisal of Real Estate (8 ed. 1983) as follows;
Real property includes the interests, benefits, and rights inherent in the ownership of physical real estate. Real property includes the “bundle of rights” that is inherent in the ownership of real estate.
In the bundle of rights theory, ownership of real property is compared to a bundle of stieks. Each stick represents a distinct and separate right, which may be the right to use real estate, to sell it, to lease it, to enter it, to give it away, or to choose to exercise more than one or none of these rights.
It is possible to own all of the rights in a parcel of real estate or only a portion of them. A person owning all of the rights is said to have fee simple title. Fee simple title is regarded as an estate without limitations or restrictions. Less than complete estates result from partial interests that are created by selling, leasing, or otherwise limiting the bundle of rights in the fee estate.
*424 The rights in the bundle, subject to government limitations and private restrictions, can be sold, leased, transferred, or otherwise disposed of individually. Certain parcels of land afford owners a number of options. For example, one property owner could sell or lease mineral rights and still retain the rights to use the surface area. Another could lease surface rights to one party and lease subsurface rights to another. Still another could sell or lease air rights for construction or avigation. Thus, the ownership of certain rights may be severed from the ownership of the rest of a property by their being sold, leased, or given as a gift to other parties, [at 8-9]
In Merchandise Mart Associates v. Pennsauken Tp., 3 N.J.Tax 275 (Tax Ct.1981) this court observed:
It is basic in valuing real property for tax purposes that the independent holding of separate legal interests in the taxable property does not affect the method of valuing and assessing the total property. In Stack v. Hoboken, 45 N.J.Super. 294, 300, 132 A.2d 314 (App.Div.1957), it was held that “The law requires an assessment of the value, not of the purported owner’s title, but of the land; the assessed value of the land represents the value of all interest in the land. N.J.S.A. 54:4-23. Cf. N.J.S.A. 54:4-54.”
It is axiomatic that for purposes of local real estate taxation in the State of New Jersey, land and improvements are to be assessed at their total full value and not just the interest of either a lessor or a lessee. New Brunswick [v. State Div. of Tax Appeals, 39 N.J. 537] at 544, 189 A.2d 702. See also, Jersey City v. Harborside Warehouse Co., 19 N.J.Misc. 222 (Bd. of Tax App.1941), 17 A.2d 572 and Secaucus v. Damsil, 120 N.J.Super. 470, 474, 295 A.2d 8 (App.Div.1972). [at 282]
It is a basic principle of real estate assessment in New Jersey that the independent holding of separate legal interests in taxable property does not affect the method of valuing and assessing the total property. “The law requires an assessment of the value, not of the purported owner’s title, but of the land; the assessed value of the land represents the value of all interests in the land.” Stack v. Hoboken, 45 N.J.Super. 294, 300, 132 A.2d 314 (App.Div.1957); In re Appeal of Neptune Tp., 86 N.J.Super. 492, 499, 207 A.2d 330 (App.Div.1965); Secaucus v. Damsil, Inc., 120 N.J.Super. 470, 295 A.2d 8 (App.Div.1972); Lawrence Associates v. Lawrence Tp., 5 N.J.Tax 481, 502 (Tax Ct.1983); Briskin v. Atlantic City, 6 N.J.Tax 187, 192 (Tax Ct.1983). Accordingly, the definition of “fair market value” is not restricted to the realizable sales price of the owner’s interest.
*425 Thus, landlord and tenant interests, life tenant and remainder interests, co-tenant interests, mortgagor and mortgagee interests, and grantor and grantee interests (where less than a full fee is conveyed) are not separately assessed, instead the full value of the fee is assessed as though there were no separate interests. See New Brunswick v. Tax Appeals Div., 39 N.J. 537, 544, 189 A.2d 702 (1963); Merchandise Mart Assocs. v. Pennsauken Tp., 3 N.J.Tax 275 (Tax Ct.1981); Glenwood Realty Co. v. East Orange, 78 N.J.Super. 67, 72, 187 A.2d 602 (App.Div.1963); Tower West Apt. Ass’n v. West New York, 2 N.J.Tax 565, 573 (Tax Ct.1981), aff’d 5 N.J.Tax 478 (Tax Ct.1983); Bonbright, Valuation of Property 495-96 (1937). Also, the fact that the owner’s title has a cloud on it is not a proper basis for reducing the land’s assessment value. Stack v. Hoboken, supra 45 N.J.Super. at 300, 132 A.2d 314; Secaucus v. Damsil, Inc., supra, 120 N.J.Super. at 473-74, 295 A.2d 8; Hirschman v. Millburn Tp., 1 N.J.Tax 27 (Tax Ct. 1980).
The only apparent exceptions to the above general rule are:
(a) in some instances where restrictions on the fee are government imposed, such as rent-leveling ordinances which do not permit tax pass-through, Pinelands Protection Act, N.J.S.A. 13:18A-1 et seq.; restrictive zoning ordinances, Flood Hazard Area Control Act, N.J.S.A. 58:16A-50, et seq.; Newark v. Vernon Tp., 1 N.J.Tax 90 (Tax Ct.1980); Riorano, Inc. v. Weymouth Tp., 4 N.J.Tax 550, 566 (Tax Ct.1982), aff’d 6 N.J.Tax 253 (App.Div.1983); and,
(b) where the property is dedicated to and used for public purposes and the elements of value in the property are transferred to the community at large in the form of public rights. Englewood Cliffs v. Estate of Allison, 69 N.J.Super. 514, 174 A.2d 631 (App.Div.1961).
In the instant case the subject property undoubtedly does not come within the above exceptions; the restrictions on the property are not government imposed nor is the property dedi *426 cated to public purposes with its element of value transferred to the community at large in the form of public rights.
A third so-called exception is where the easement on a property transfers elements of value to another taxpayer’s property thereby reducing the assessable value of the servient property and increasing the assessable value of the dominant property. Since in this type of situation the value of the fee is not reduced but instead the interest is transferred and its assessable value retained, it is not a true exception to the general rule of valuing all interests.
As the Appellate Division pointed out in In re Appeal of Neptune Tp., supra, 86 N.J.Super. at 500, 207 A.2d 330, the type of easements which fall within this category are found in Metropolitan Life Ins. Co. v. McGurk, 119 N.J.L. 517, 197 A. 47 (E. & A.1938); Lipman v. Shriver, 51 N.J.Super. 356, 144 A.2d 356 (Law Div.1958); and Ehren Realty Co. v. Magna Charta B. & L. Ass’n., 120 N.J.Eq. 136, 184 A. 203 (Ch.1936).
In each of these cited cases an easement was carved out of one property for the benefit of another property and the identical issue raised was the effect upon the easement of a tax lien foreclosure against the servient estate. In Lipman the court explained the law on this issue stating:
It seems evident from the case law on the subject that the true criteria to be used in deciding what interests are encompassed by the phrase “other person having an interest in land” is whether a subsequent foreclosure will cut off that interest. If it would be cut off then the holder thereof has a right to redeem under R.S. 54:5-54, whereas if the interest would not be cut off by a subsequent foreclosure then the holder thereof has no right, nor indeed no necessity, to have the right to redeem to protect that interest.
Whether or not an easement appurtenant to the dominant estate will be cut off by foreclosure of a tax sale certificate covering the servient estate depends upon the effect given to and the method of assessment itself. Under R.S. 54:5-6 all taxes on lands “ * * * shall be a lien on the land on which they are assessed * * The assessment is to be on all real property “ * * * not expressly exempted from taxation or expressly excluded * * * at its true value and shall be valued by the assessors of the respective taxing districts.” R.S. 54:4-1, as amended. Furthermore, "The assessor shall ascertain the names of the owners of all real property * * * and * * * determine the full and fair value of each parcel of real property * * * at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract * * R.S. 54:4-23, as *427 amended. In Ehren Realty Co, v. Magna Charta Building & Loan Ass’n., 120 N.J.Eq. 136 [184 A. 203] (Ch.1936), the court held that this statutory mandate required the assessor to take into account easements appurtenant as they will reflect the full and fair value of each piece of real property, citing Tax Lien Co. of New York v. Schultze, 213 N.Y. 9, 106 N.E. 751, L.R.A1915D, 1115 (Ct.App.1914), wherein it was said:
“When an easement is carved out of one property for the benefit of another, the market value of the servient estate is thereby lessened, and that of the dominant increased, practically by just the value of the easement; the respective tenements should therefore be assessed accordingly.” [51 N.J.Super. at 359-360, 144 A.2d 356]
In summarizing the basis for its decision the court concluded:
Where the lien runs against a servient estate foreclosure will not cut off an easement appurtenant to the dominant estate, as the assessment upon which the lien was based is upon the value of the servient estate minus the easement while the dominant estate is assessed including the value of the easement. [Id. at 361, 144 A.2d 356]
In re Appeal of Neptune Tp. was not a tax foreclosure case but instead, as here, it was a tax assessment appeal. The parcel under appeal consisted of a narrow strip of land between 40 feet and 60 feet wide and about 1400 feet long located in a residential area between a river on one side and a road paralleling the river on the other side. The parcel was owned by Shark River Hills Beach Corporation organized as a nonprofit corporation and used as a bathing area by residents who were members of the corporation. Title to the property was obtained from the township. The deed expressly conditioned that the grantee, its successors, assignees and lessees could not use or occupy the premises for any purpose other than a bathing area and without profit for the use thereof and precluded the erection of any structures thereon without the written consent of the grantor. Nor could the property be conveyed, mortgaged or otherwise alienated without the written consent of the grant- or. In the event of a violation, the grantee was to forfeit all rights and title in the lands. In reversing the Division of Tax Appeals, which had entered judgment reducing the amount of the original assessment, the Appellate Division held that the restrictions placed upon the property were not easements “within the meaning of the cases (Metropolitan Life Ins. Co., Lipman, and Ehren Realty Co., all supra) which permit a *428 reduction in value because of such easement, therefore, the restrictions could not be considered in fixing the property’s market value.”
These cases emphasize that we must distinguish between property rights and property values. Certain restrictions may create increased value to adjoining or surrounding properties but they do not necessarily create property rights. Generally, all easements or rights which create interests transferable from one estate to another estate, subject to separate valuation for assessment purposes, are taxable as part of the dominant estate thereby creating in the dominant estate a property right which remains inviolate upon a tax sale of the servient estate.
To be determined in the case sub judice is whether an easement was carved out of the beach property whereby its value was transferred to the surrounding properties, subjecting the latter to increased assessments.
An easement is defined as:
A right of use over the property of another. Traditionally the permitted kinds of uses were limited, the most important being rights of way and rights concerning flowing waters. The easement was normally for the benefit of adjoining lands, no matter who the owner was (an easement appurtenant), rather than for the benefit of a specific individual (easement in gross). The land having the right of use as an appurtenance is known as the dominant tenement and the land which is subject to the easement is known as the servient tenement. [Black’s Law Dictionary (5 ed. 1979).at 457]
Black's Law Dictionary, supra., further defines an easement as:
An interest which one person has in the land of another. A primary characteristic of an easement is that its burden falls upon the possessor of the land from which it issued and that characteristic is expressed in the statement that the land constitutes a servient tenement and the easement a dominant tenement. Potter v. Northern Natural Gas Co., 201 Kan. 528, 441 P.2d 802, 805. An interest in land in and over which it is to be enjoyed, and is distinguishable from a “license” which merely confers personal privilege to do some act on the land. Logan v. McGee, Miss., 320 So.2d 792, 793. [Ibid.),
In the instant case the deeds conveying the subject property and the subdivision lots do not create rights specifically in the *429 lands of the subdivision lots but instead they grant rights to individuals — the members of MLA.
These deeds do not restrict nor provide the qualifications of the members of MLA. The membership qualifications are contained in the association’s by-laws which admittedly can be amended to admit additional members who do not own lots within the original subdivision.
The original by-laws provided for two types of members, owners and family members. Owner-members are “record owners of property at Mimosa Lakes,” however, “the record owner can give full owner member rights to any other individuals (maximum of two), by written proxy signed by a record owner or record owners.”
The by-laws additionally provide that dues are “declared to be the first condition of membership,” and dues and assessments 60 days in arrears result in a member’s suspension, which specifically suspends his rights and privileges in the beach property. If a member’s dues are in arrears for two years his rights and privileges can be reinstated only upon the payment of all delinquencies plus an additional $1,000 reinstatement fee. Subsequent owners of property in order to enjoy the rights and privileges of membership, must satisfy all delinquencies, including reinstatement fees incurred by previous owners.
Accordingly, if a qualified property owner chooses not to apply for membership or if, after becoming a member he is suspended, during that period of nonmembership neither he nor his real property would have a right or interest in the beach lot. In such a situation that person’s property would not possess an interest transferred from the beach property subject to assessable valuation. The right granted to owners of property of the subdivision have a personal contingent right to become a member of the association. However, there has not been created in his real property a dominant easement over the beach lot; MLA is the owner of the full fee.
Under the facts of this case the assessor may not legally transfer the value created by the restrictions from the beach lot *430 to the other lots of the subdivision. Moreover, it would be nigh impossible for him to be able to conclude a market value for the rights. As noted by the stipulation, not only the subject lot but also the two lakes are included in the property owned by the association; however, the members do not have equal need or access to the beach lot. A majority of the owners’ lots are situated directly on the lakes. Compare Tower West Apartment Association v. West New York, 2 N.J.Tax 565 (Tax Ct.1981), aff’d 5 N.J.Tax 478 (App.Div.1982). Since the restrictions against the subject lot have not created and transferred an assessable interest from the beach lot to the other lots all of the “bundle of rights” remain within the subject lot. Therefore, all of its interests must be valued in arriving at the property’s correct assessment.
Judgment will be entered reversing the determination of the Burlington County Board of Taxation and increasing the assessment to the stipulated value of $19,700.