LASSER, P.J.T.C.
In this case taxpayer contests the 1986 real property tax assessments on nine parcels of real property in Montague Township, Sussex County, New Jersey, located in Blocks 18 and 18.14. These parcels comprise the recreational facilities of the Holiday Lake club community. The entire community, known as Highpoint Country Club, consists of approximately 1,100 acres. The subject property encompasses a lake, a beach and a large clubhouse, with banquet facilities, locker rooms, pro shop, an Olympic-size outdoor swimming pool and two lighted tennis courts. There is also a basketball court, a ball field and a beach pavilion. This property, together with the roads and gatehouse, are referred to hereafter as the “common facilities.” The property is located in an R-4 (high-density residential) zone, permitting both single and multi-family housing with an overall density of four units an acre.
The clubhouse, bar and restaurant facilities are open to the public. A portion of the clubhouse, consisting of the pro shop, locker rooms and golf cart storage area, is leased to the owner of the golf course at $13,000 a year for seven years.
*400 The Highpoint Country Club community now comprises approximately 550 single-family and multi-family residential units, with the potential for a total of 4,400 units when the project is fully developed. The residential structures range from single-family residences to large, multi-family apartment complexes which have been marketed as condominiums. The nine 1986 local property tax assessments in contest are:
Lot Number Land Assessment Lot Size Property Use
9.01 $ 4,000 4 acres lake
15.01 9,000 9 acres lake with small island & community sign
21.02 65.000 65 acres lake
33.02 49,200 49.234 acres lake
IF 10.000 10 acres beach, pavilion & basketball court
35 1,000 .95 acre island in 65-acre lake
33.01 10,400 10.433 acres ball field
23.B1 10,000 1.175 acres parking lot
All of the foregoing assessments are for land only.
The clubhouse, located on Lot 21.01 and also in contest, is assessed at:
Land $ 24,400
Improvements 663,600
Total $688,000
The clubhouse lot is 6.6159 acres in size. All of the above assessments were first appealed to the Sussex County Board of Taxation and were affirmed by that board. Valuation only is in issue.
The Holiday Lake development began in the mid-1960’s. It met financial reverses, and in the early 1970’s was the subject of a bankruptcy action. It was then sold through the bankruptcy court, and the purchaser resold it to Altamont Development Corporation, a corporation owned by Inter-County Savings Bank (hereinafter “developer”), which is presently the owner of the undeveloped land and the golf course.
*401 In 1984 the property was the subject of an action in the Superior Court, Chancery Division, before Hon. Reginald Stanton, J.S.C., who rendered an opinion on October 12, 1984 which outlines the financial history and development problems of Holiday Lake. In part, these problems involved the uncertain nature of the rights of the individual lot owners to use the common facilities. This opinion restructured the legal organization of the community, providing for a community corporation to which the common facilities would be conveyed.
Pursuant to Judge Stanton’s opinion, the Community Corporation of Highpoint, Inc., was incorporated, and bylaws were adopted. Deeds were recorded transferring the community facilities to the corporation, encompassing the terms of Judge Stanton’s decision and the judgment dated January 2, 1985, recorded January 22, 1985 in deed book 1236, page 183 in the Office of the Clerk of Sussex County.
The members of the Community Corporation are the developer and the present and future lot owners and residents. Membership is compulsory, and each member has one vote per vacant lot or dwelling unit. The developer has 40% of the votes until its ownership of property falls below this percentage, and also has veto power over certain corporate financial decisions. Members are entitled to use the common facilities, all of which (except the golf course) are owned by the Community Corporation.
The Community Corporation is governed by a board of trustees which fixes membership dues and assessments from time to time. The bylaws provide, among other things, that the Community Corporation has a lien on each unit for unpaid dues or assessments, and the purchaser or transferee of title to a lot or unit is jointly and severally liable with his predecessor in title for amounts due to the Community Corporation for dues and assessments. The water and sewerage systems are to be conveyed to public utility companies controlled by the developer or by the lot owners; the golf course is to be retained by the developer and may be used by any lot owner under rules and fees established by the developer.
*402 The appraisal expert for the taxpayer testified to sales of ten vacant lots at Highpoint Country Club during the period July 1 to October 8, 1986 ranging in size from .309 acre to .598 acre and in sale price from $11,000 to $16,500 a lot. All of these sales included the right to. use the common facilities and the obligation to pay assessments for their upkeep and maintenance. This expert also testified to sales of ten lots in Montague Township outside of the Highpoint Country Club development, which sales did not include the privileges and obligations with respect to use of the common facilities. These sales ranged in date from February 7, 1985 to December 18, 1986, in size from .689 acre to .94 acre and in price from $6,500 to $12,500. Prom these sales the expert concluded that the value of a lot at Highpoint Country Club is $13,000 and the value of a lot outside Highpoint Country Club without the right to use the common facilities is $9,700 a lot. The difference, he concluded, is the value of the right to use the common facilities. He stated that the purchase price of a lot in Highpoint Country Club included purchase of the right tq use the common facilities, which he opined is the equivalent of the purchase of the facilities themselves. This expert reasoned that if all lot owners have undivided interests in all of the common facilities, the common facilities cannot be sold, and thus, have no fair market value of their own. He conceded on cross-examination, however, that the common facilities could be sold.
Taxpayer seeks to set aside the assessments on the subject nine parcels on two grounds: (1) the value of the common facilities is reflected in the assessments on the individual lots because the purchase prices of these lots include an increment attributable to the value of the lot owners’ rights to use the common facilities, and that taxing the individual lots and the common facilities constitutes double taxation, and (2) the property rights of each lot owner in the common facilities, which were imposed by the community scheme, have caused the common facilities to be unmarketable and therefore of no value.
Taxpayer argues that Judge Stanton’s decision created rights in the lot owners to use the common facilities, and the value of *403 these rights must be reflected in the assessments on the individual lots and deducted from the assessments on the common facilities. It contends that when the value of the lot owners’ rights is deducted, the common facilities are left with only a nominal value. Taxpayer concludes that the assessments on the common facilities are excessive because no deduction has been made for the value of the rights transferred to the individual lot owners by Judge Stanton’s decision.
The assessor testified that a municipal-wide revaluation was conducted in 1980 for the year 1981. He stated that after Judge Stanton’s decision, he allocated the common facilities’ assessments in accordance with the decision, using the assessments established by the revaluation. He testified that it was necessary to divide some assessments because of transfers of ownership, and in doing so he used unit values from the 1981 revaluation. He did not increase or decrease any assessment by reason of the creation of the lot owners’ rights in the common facilities.
As a general proposition, every separately-assessed parcel of real property must be assessed to the owner at a value that represents all of the interests in the property. Lidell v. Mimosa Lakes Ass’n, 6 N.J. Tax 417, 424 (Tax Ct.1984); Hirschman v. Millburn Tp., 1 N.J. Tax 27, 30 (Tax Ct.1980); Secaucus v. Damsil Inc., 120 N.J. Super. 470, 474, 295 A.2d 8 (App.Div.1972), certif. den. 62 N.J. 90, 299 A.2d 88 (1972); In re Neptune Appeal, 86 N.J.Super. 492, 499, 207 A.2d 330 (App. Div.1965); N.J.S.A. 54:4-23.
Exceptions to this proposition are found in the Horizontal Property Act, N.J.S.A. 46:8A-26, and the Condominium Act, N.J.S.A. 46:8B-19. However, in the subject case, individual lots have not been subjected to either of these acts by the filing of a master deed, and therefore there must be a separate assessment for each lot, and the common facilities must be separately assessed.
Taxpayer argues that the subject property has no value because the lot owners’ rights to use the common facilities encumber the title and render remote the possibility of sale. The absence of a market due to the complexity of the title does not make a property valueless. Such properties are routinely *404 valued by the cost approach. In this case there may be comparable sales of land or of club or restaurant facilities to assist in the valuation process. For valuation purposes we must assume that, as with all other property, this property must be assessed to the owner at a value which includes all interests. No proof of the value of the subject property including all outstanding interests has been offered by taxpayer.
Judge Lario, in Lddell, supra, discusses exceptions to the requirement that all interests must be included in the assessment to the owner. None of these exceptions appear to apply to the subject property. The rights of the lot owners are not imposed by statute or local ordinance. The restrictions are not a dedication to public use. They are not an easement appurtenant because dominant and servient owners are essentially the same persons.
The transfer of value concept was discussed by Judge Crab-tree in Tower West Apt. Ass’n v. West New York, 2 N.J. Tax 565, 570 (Tax Ct.1981), aff’d 5 N.J.Tax 478 (App.Div.1982). The court in that case stated that plaintiff, to prevail on a “transfer of value” concept, must establish that the “servient tenement” has no value. Grasser v. Graham, 97 Misc.2d 417, 411 N.Y.S. 2d 836 (Sup.Ct.1978), is a New York case having facts very similar to the subject and supporting the proposition that positive proof of no value of beneficial interest to the owner is required to support a transfer of value to the dominant tenement owners. Even if the lot owners were deemed to fall within the Lidell exceptions, there is no way of determining what deduction should be made for these property rights because no value has been established for the subject property.
There is no limitation preventing either a sale by the Community Corporation of part or all of the common facilities or their use by others. The common facilities are now used in part by non-members, who pay for such use. This indicates that the common facilities have an independent value.
Furthermore, in contesting the assessments on the common facilities, taxpayer seeks a reduction in these assessments *405 without a consequent increase in the assessments on the individual lots, thus dealing with only half of the equation. The assessor has testified that all of the assessments have been made in accordance with the same standard of value. In the absence of proof to the contrary and based on the presumption of correctness of the assessments, I must conclude that the 1981 revaluation correctly valued both the common facilities and the individual lots. Reducing the assessments on the common facilities without increasing those on the individual lots would result in a lack of uniformity of assessment.
I note that sale price and assessment information was supplied for eight of the ten Highpoint Country Club sales. The average assessment to sale price ratio for these eight sales is 65.5%, while for the ten lots outside Highpoint Country Club the assessments average 86.5% of the sale price.[1] One might conclude from these 18 sales that the Highpoint Country Club lots have increased more rapidly in value than other lots in Montague Township, or that the assessments did not include the value of the rights in the common facilities and therefore that reducing the assessments on the common facilities would cause a lack of uniformity of assessment. See Mobil Oil Corp. v. Greenwich Tp., 9 N.J. Tax 123, 127 (Tax Ct.1986); Purex Corp. v. Paterson, 8 N.J. Tax 121 (1986); Sage v. Bernards Tp., 5 N.J. Tax 52, 73 (Tax a.1982), aff’d 6 N.J. Tax 349 (App.Div.1984), certif. den. 97 N.J. 581, 483 A.2d 125 (1984).
For the foregoing reasons, I conclude that taxpayer has not established a right to a reduction in the assessments on the common facilities, and I direct the Clerk of the Tax Court to enter judgments affirming the 1986 judgments of the Sussex County Board of Taxation.

The 1986 common level ratio promulgated by the Director of the Division of Taxation pursuant to N.J.S.A. 54:1-35.1 is 88.75%, with an upper limit of 102.06% and a lower limit of 75.44%.