TRUSTEES OF LLEWELLYN PARK, PLAINTIFF-APPELLANT, v. TOWNSHIP OF WEST ORANGE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1988—Decided April 11, 1988.

Before Judges KING, GRUCCIO and D'ANNUNZIO.

*Miriam E. Cahn* argued the cause for appellant (*Hannoch Weisman,* attorneys; *Todd M. Sahner,* of counsel; *Todd M. Sahner* and *Miriam Cahn,* on the brief).

*Matthew J. Scola,* argued the cause for respondent.

The opinion of the court was delivered by:

GRUCCIO, J.A.D.

Plaintiff Trustees of Llewellyn Park appeals a judgment of the Tax Court of New Jersey denying a reduction on the tax assessments for the tax year 1984 on 59 acres owned by plaintiff in Llewellyn Park, West Orange, New Jersey. Plain-

tiff and defendant Township of West Orange filed a stipulation of facts on June 23, 1986, and, thereafter, the tax court judge issued a written opinion on February 6, 1987.

Llewellyn Park is, in essence, a planned community development open only to the residential owners and their guests. The area which is the subject of this appeal is more than 35 acres of private parkland held for the exclusive interest of the surrounding residential owners in Llewellyn Park. The park was created by deed on February 28, 1857. When residences located in the park are bought and sold, sellers and buyers are subject to and take into account the terms of the deed. No discount was taken of the assessments of the residential properties in the park to reflect the apportioned value of the park properties.

Plaintiff contends that the subject properties are the servient estates for an easement appurtenant running in favor of the owners of residential properties within the (so-called) Llewellyn Park. Plaintiff further argues that the "burdening" of the subject properties with this so-called easement encumbers them to such an extent as to render them valueless. Moreover, whatever value they do have should be apportioned among the owners of the dominant estate, *i.e.*, the owners of residential property. Plaintiff claims the provisions of the deed support the position that the assessments on plaintiff's property should be eliminated or reduced to a nominal value. Defendant claims the property should be assessed at full value.

The relevant part of the deed provides:

[The trustees of the property] ... shall and will, forever hereafter, suffer and permit the said Llewellyn Park, and its appurtenances with its several roads or avenues, and ways or rights of way, as laid down on the said map, to be freely, and at all times, used and enjoyed, as a place of resort and recreation, ... [by the residential property owners in the park].

. . . .

[Residential property owners in the park shall be permitted] to pass ... at all times, and for all purposes, either on foot, or with horses, cattle or carriages, over and through the said Llewellyn Park, by means of its several roads or avenues, and ways as laid down on the said map.

. . . .

> [The trustees of the property], when thereunto requested in writing, by all persons who, being owners of the hereinbefore mentioned lands and premises, are now, or may hereafter become, entitled to the use and enjoyment of the said Llewellyn Park, ... shall and will convey the whole or any part of the said Llewellyn Park, in fee simple, or for any less estate, and distribute the proceeds of such sale or sales among the said owners, in proportion to the quantity of the said land severally owned by them at the time of such sale or sales.

In 1984 defendant conducted a revaluation of all Township property. The properties subject to this appeal were assigned per-acre values ranging from $4,048 to in excess of $45,000, averaging approximately $9,000 per acre. The assessments of the private residences in the park for 1984 are based on true value. We note there was a condemnation of a parcel of land in connection with the construction of an interstate highway.

Plaintiff contends that the restrictions in the deed create an easement appurtenant burdening the common properties. "An easement appurtenant is created when an owner of one parcel of property (the servient estate) gives rights regarding that property to the owner of an adjacent property (the dominant estate). It enhances the value of the dominant estate and cannot exist separate from the land itself." *Village of Ridgewood v. Bolger Foundation*, 104 *N.J.* 337, 340, 517 *A.*2d 135 (1986). Plaintiff thus submits that the *restriction* in the deed transfers rights regarding the use and alienation of the common properties and therefore *creates an easement.*

All property in the park is sold subject to and in accordance with the rights set forth in the deed. The deed rights pass with the dominant estate. A purchaser of a residential property in the park simultaneously receives a proportionate interest in the park properties.

Defendant's position is much more simply put; the restriction merely creates a private right in the park enjoyed by the residential property owners. If any or all of the common areas are sold, the properties will no longer be subject to the use restriction binding plaintiff and therefore the value of the property is not lessened by the restriction.

Judge Hopkins first held that "there was no evidence introduced showing the dollar amount by which the alleged easements reduced value." The assessment is presumed correct. Sufficient evidence to rebut the presumption is needed to enable the court to determine a value different from the assessment. Secondly, Judge Hopkins held that the property rights transferred pursuant to the trust deed constituted equitable rights under the trust, as distinguished from a legal interest in the land, a prerequisite to an easement. The plaintiff is responsible for the maintenance of the property. Additionally, it has the right to direct the sale of the property for its own benefit. He found that these rights and duties that flowed with the interest were inconsistent with the transfer of rights by an easement. We have carefully reviewed the briefs and the arguments of counsel and affirm substantially for the reasons expressed by Judge Hopkins in his opinion of February 6, 1987.

We find the following additional grounds for affirmance. The park property and the residential property owners are, in effect, trust beneficiaries. If any portion of the common areas are sold, the residential property owners receive a proportionate interest in the proceeds. The residential property owners would have a legal interest in the land if such a sale took place because they would have a legal interest in the proceeds. Their interest is in fee with a restriction on alienation. If the residential property owners want to sell the property they can do so only with the unanimous consent of all the residential property owners. While unanimous consent may be unlikely, it is plausible.

This trust is very similar to a homeowner's association. Closest to the familiar, individual form of home ownership is the Homeowner's Association, or "HOA," often referred to in real estate industry parlance as the "fee simple form of ownership with an automatic homeowners association." In such a project, legal title to individual dwelling lots in a development, and the improvements thereon, vests exclusively in the purchaser of such lot, while legal title to the open space, recreation and other common facilities, which are located on other lots, is vested in a non-profit homeowner's association, which holds such title for the benefit of its members. As in other

forms of common interest developments, the owner of each individual dwelling lot automatically acquires membership in the association upon acquisition of title to the dwelling lot. Each member's beneficial interest in the common facilities is derived from his membership in the association and is usually held on an equal and undivided basis, with the other members.

The homeowner's association is traditionally limited to maintenance and service functions on the common property alone although it can be structured to perform functions with respect to maintenance and provision of services for the whole development, the individual lots as well as the common property.....
Note, however, that the common facilities which are legally owned by the homeowners' association will often be assessed as association property and to that extent all members will be equally liable for that debt and therefore burdened by the defaults of their fellow members.

. . . .

Because of the separate tax assessment of unit and association-owned common facility lots, *HOA's face a risk of double taxation. The problem arises because of the fact that the assessment for the dwelling unit itself usually is based upon the deed consideration, which includes the value of the unit owner's pro-rata share of the land and improvements located on the separate tax lot containing the common facilities.* Therefore, under these circumstances, a double assessment is imposed upon each homeowner for his proportionate share of the value of the common lands and improvements. [W. Smith, *New Jersey Condominium Law,* 5–7 (1985) (emphasis added)].

The only difference between the park trust arrangement and the classic homeowners' association is the residential property owners' *per acre* proportionate share in the underlying trust property. The residential property owners are responsible for taxes and assessments no greater than $10 per acre. This is very similar to *Lindell v. Mimosa Lakes Assn.,* 6 *N.J. Tax* 417 (Tax Ct.1984), which involved a tax assessment on a vacant beach lot owned by a nonprofit corporation which maintained the lot as a member's access to the lake. The court held that the deeds conveying the beach lot did not create rights in other subdivision lots directly, but instead granted such rights to individual members of the corporation. The "basic principle of real estate assessment in New Jersey [is] that the independent holding of separate legal interests in taxable property does not affect the method of valuing and assessing total property." *Id.* at 424. The only apparent exceptions to this basic principle are where the "restrictions on the fee are government imposed," and "where the property is dedicated to and used for public

purposes and the elements of value in the property are transferred to the community at large in the form of public rights." *Id.* at 425.

However, no evidence of actual value was introduced in this matter. There were no dollar figures presented that would aid in a determination of whether a double taxation situation existed. Plaintiff has not met its burden of showing that the assessment was incorrect.

Affirmed.