NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
-----------------------------------------------x
WESTERHOLD, JOHN A. & LORI R.,:  TAX COURT OF NEW JERSEY
ET. ALS.,                       :    DOCKET NO:    010281-2020
                                :                  010282-2020
           Plaintiff,           :
                                :
       v.                       :
                                :
BRICK TOWNSHIP,                 :
                                :
           Defendant.           :    CIVIL ACTION
-----------------------------------------------x
-----------------------------------------------x
WESTERHOLD, JOHN A. & LORI R.,:  TAX COURT OF NEW JERSEY
ET. ALS.,                       :    DOCKET NO:    010279-2020
                                :                  010280-2020
           Plaintiff,           :
                                :
       v.                       :
                                :
TOMS RIVER TOWNSHIP,            :
                                :
           Defendant.           :    CIVIL ACTION
-----------------------------------------------x
-----------------------------------------------x
WESTERHOLD, JOHN A. & LORI R.,:  SUPERIOR COURT OF NEW JERSEY
                                :  LAW DIVISION – OCEAN COUNTY
           Plaintiff,           :    DOCKET NO:    OCN-L-492-22
                                :                  OCN-L-849-23
                                :                  OCN-L-515-24
       v.                       :                  OCN-L-832-25
NORMANDY BEACH ASSOC. INC.,     :
BRICK TOWNSHIP, and             :
TOMS RIVER TOWNSHIP,            :
                                :
           Defendant.           :    CIVIL ACTION
-----------------------------------------------x
```

Decided December 5, 2025.

Peter J. Zipp for John and Lori Westerhold (Zipp & Tannenbaum, LLC, attorneys).

Robert B. McBriar for Normandy Beach Association, Inc. (Schenck, Price, Smith & King, LLP).

Scott W. Kenneally for Brick Township (Starkey, Kelly, Kenneally, Cunningham, Turnbach & Yannone, attorneys).

Kelsey Anne McGuckin-Anthony for Township of Toms River (Dasti, Murphy, McGuckin, Ulaky, attorneys).

CIMINO, J.T.C.

The genesis of this dispute is a footpath across oceanfront dunes. Plaintiffs, John and Lori Westerhold, are owners of a beachfront property in Brick Township, New Jersey. Defendant, Normandy Beach Association, Inc., is the title owner of a parcel between the Westerholds' property and the Atlantic Ocean. Prior to Superstorm Sandy in 2012, the Westerholds could walk directly onto the beach. Subsequent to the storm, the United States Army Corps of Engineers and the New Jersey Department of Environmental Protection (DEP) constructed a dune system between Westerholds' home and the Atlantic Ocean. The Westerholds then constructed a foot path across the dunes to get access to the ocean. The Normandy Beach Association objected to the foot path and insisted the Westerholds use the nearby stub-streets for access to the ocean.

2

From this dispute arose a plethora of litigation including a Superior Court action as to the Westerhold's right to beach access along with a demand for attorney's fees and punitive damages. There were also Municipal Court complaints claiming the Westerholds engaged in criminal mischief and trespass. This in turn lead to amendment of the Superior Court action to include claims for malicious prosecution and libel.

The Westerholds have also filed the instant third-party tax appeals claiming that the Normandy Beach Association's bayfront clubhouse in Brick Township as well as its oceanfront properties in both Brick Township and Toms River Township are underassessed.

The Municipal Court dismissed the complaints for lack of probable cause. The Superior Court action was subject to a summary judgment motion, then appealed to the Appellate Division and remanded. After a trial which included experts in ancient deeds, another appeal was taken. See Westerhold v. Normandy Beach Assocs., Inc., 2025 N.J. Super. Unpub. LEXIS 79 (App. Div. 2025) (decision on remand OCN-37-20, opinion (Chanc. Div. Aug. 22, 2025), subsequently appealed A-000425-25, notice of appeal (App. Div. Oct. 4, 2025)). The subsequent appeal is pending.

This court scheduled this matter for a trial commencing on December 8, 2025. The court required both parties to produce appraisal reports for both the bayfront and

oceanfront properties. The parties' appraisal experts arrived at wildly different valuations. The Normandy Beach Association valued its clubhouse at $100 and the Westerholds placed the value at $10 million. The Normandy Beach Association valued the beach at $2,800 and the Westerholds placed the value at $26 million. While not so uncommon in the Superior Court, wide variations in experts report by many orders of magnitude are uncommon in the Tax Court.[1]

Factual and legal conclusions are driving the difference in appraisal values. One must remember that the role of experts is to assist the trier of fact. N.J.R.E. 702. State v. Berry, 140 N.J. 280, 291 (1995). The narrowing of some of the issues prior to trial will make the testimony offered by the appraisal experts more focused and effective at trial.

The parties have a dispute that runs much deeper than a difference of opinion as to the assessed value of the Normandy Beach Association properties. Having spent much time, effort and expense litigating their disputes in four courts, the Chancery Division, Appellate Division, Municipal Court and Tax Court, the only thing the parties seem to agree upon is that they want to continue litigating. Since the vital public interest of taxation is way beyond the animus the parties may have to each other, it is essential that any determination of this court be based upon a

---

[1] One order of magnitude difference is 10 times, two orders of magnitude difference is 100 times, three orders of magnitude is 1000 times, and so on.

sound factual and legal basis.  See  St. Michael's Passionist Monastery v. City of Union City, 5 N.J. Tax 415, 418 (Tax 1983).

The clubhouse property is a nearly one-acre parcel with 300 feet of bayfront frontage wrapping around the corner on a lot ninety-five feet deep.  Presently there is a clubhouse located on the property.  The property is located in an R-5 zone and is assessed for $800,000.  The Normandy Beach Association claims the property cannot be sold unless thirty percent of the property owners and five-sevenths of the governing board approve the sale.  The Westerholds argue the parcel can be subdivided into seven residential bayfront lots each with a value over $1.4 million for a total valuation close to $10 million.

Considering the current posture of the appraisal reports, the parties need to address Lidell v. Mimosa Lakes Ass'n, 6 N.J. Tax 417 (Tax 1984) and Trustees of Llewellyn Park v. Township of West Orange, 224 N.J. Super. 342 (App. Div. 1988).  Both these decisions address the valuation of lands utilized by an association of property owners.   The parties also need to address the issue raised in the Borough of Paramus v. Etaner Enters., 14 N.J. Tax 208 (Tax 1994), aff'd, 15 N.J. Tax 217 (App. Div. 2015), dealing with private, contractually imposed restrictions.  Other decisions that may be relevant include Community Corp. of Highpoint, Inc. v. Township of Montague, 10 N.J. Tax 237 (App. Div. 1988)  (affirming 9 N.J. Tax 398 (Tax 1987)) and  Township of Neptune v. Shark River Hills Beach Corp., 86

5

N.J. Super. 492 (App. Div. 1965). The overarching gist of these decisions is that private contractual restrictions cannot impair the assessed value of a property. As applied here, the question is whether the private contractual restrictions imposed by the Normandy Beach Association on the sale of the property impair the assessed value.

Running approximately three-tenths of a mile parallel to the ocean, the oceanfront property is in two townships – Brick and Toms River. The baseline legal question is whether the court can reduce the assessed value for the DEP's easement to construct the dunes. See Village of Ridgewood v. Bolger Foundation, 104 N.J. 337, 340-41 (1986). A subsidiary question is whether the easement is a conservation easement as contemplated by N.J.S.A. 13:8B-2(b). Conservation easements which benefit the public can result in a reduction in assessed value. Bolger Foundation, 104 N.J. at 340-41. The question is whether the DEP's easement is a conservation easement or another type of easement which impacts the assessed value.

Factually, the vertical depth of the oceanfront property is unclear. "[T]he proprietor of lands having a boundary on the sea is obliged to accept the alteration of his boundary by the changes to which the shore is subject, losing by the same means that may add to his territory." City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 477 (2010) (quoting Borough of Wildwood Crest v. Masciarella, 51 N.J. 352, 357 (1968)). "The mean high water mark, generally, is the boundary line that divides

6

private ownership of the dry beach and public ownership of tidally flowed lands." Liu, 203 N.J. at 476. "The mean high water mark is that point calculated based on the average of all the high tides over a period of 18.6 years." Id. at 470 fn.2 (quoting O'Neill v. State Highway Dep't, 50 N.J. 307, 323-24 (1967)).

"Although the mean high water mark may shift due to accretion and erosion, it remains the dividing point between the upland owner's property and the tidally flowed land held in trust for the people." Id. at 477. However, courts have "long recognized that a sudden shoreline change known as avulsion (as distinct from accretion, or gradual change in configuration) has no effect on boundary . . . ." Id. at 481 (quoting New Jersey v. New York, 523 U.S. 767, 784 (1998)). A beach replenishment project is an avulsion which does not change the boundary. Id. at 484-85.

The first issue for the court to resolve is the location of the mean high water mark. Where the high water mark exists today does not necessarily represent the correct demarcation. Not only would it be helpful to know what the mean high water mark was prior to Superstorm Sandy, but it is also necessary to know whether there was any beach replenishment programs prior to Superstorm Sandy, and what the mean high water mark was prior to any pre-Sandy replenishment project.

A comprehensive survey is necessary to delineate the high water mark and the location of the dunes. The court must first determine the metes and bounds of

Normandy Beach Association's property. From there, the court must determine the portion of the property covered by dunes. The court does not want to guess or speculate as to these issues.

Both appraisals seem to indicate that dunes substantially cover the property. The DEP easement contemplates Normandy Beach Association charging for beach badges to defray the cost of beach maintenance. See N.J.A.C. 7:7-16.9(v). If the property is all dunes, the Normandy Beach Association may merely be a gatekeeper to the beach. "[N]o fees shall be charged solely for access to or use of tidal waterways and their shores." Ibid. The first question is whether the beachfront property is income producing. More precisely, the question is whether the property is more like an amusement park which is not income producing in a property tax sense, or more like a toll bridge. Compare Great Adventure, Inc. v. Township of Jackson, 10 N.J. Tax 230, 233-34 (App. Div. 1988) (amusement park) with Montgomery County v. Schuylkill Bridge Co., 110 Pa. 54, 58 (1885) (toll bridge). The second question is whether any costs for maintaining the beach are appropriate expenses, thus reducing income, if the survey reveals Normandy Beach Association does not own any beach, but only dunes. The legality of such fee collection may not necessarily abrogate a consideration of its value to the property. See also Christian Mission John 3:16 v. Passaic City, 243 N.J. 175, 191-92 (2020) (legality of use as affecting taxation).

The court does not want to careen into a trial without a proper focus on the legal and factual issues. To that end, the court will enter an order for the parties to brief the legal issues pertaining to both properties and obtain surveys of the beachfront properties to resolve the factual issues.